1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA,

8                          Plaintiff,              Case No.  13-CR-00818 PJH

9              v.                                  **SUPPLEMENTAL ORDER ON
                                                   DEFENDANTS' MOTIONS**
10   PURVIS LAMAR ELLIS, et al.,
                                                   Re: Doc. Nos. 77, 79, 80, 81, 82, 84
11                         Defendants.

12

13

14         On October 14, 2015, this matter came on for further hearing before the court on

15   the pending motions filed by defendants Purvis Lamar Ellis, Deante Terrance Kincaid,

16   Damien Edward McDaniel, and Joseph Pennymon: motion to suppress pretrial and in-

17   court identifications filed by Ellis (doc. no. 82); motion for disclosure of identity of

18   confidential informant filed by Ellis, and joined by Kincaid, on behalf of all defendants

19   (doc. no. 80); motion to suppress evidence from search of Apartment 212 and for a

20   *Franks* hearing filed by Ellis on behalf of all defendants (doc. no. 81); motion to suppress

21   evidence seized pursuant to arrest and for a *Franks* hearing filed by Ellis (doc. no. 77);

22   motion to suppress evidence seized from digital devices filed by Ellis on behalf of all

23   defendants (doc. no. 79); and application for issuance of Rule 17(c) subpoena filed by

24   Ellis on behalf of all defendants (doc. no. 84).  This order supplements the order on

25   defendants' motions entered August 17, 2015 (doc. no. 127).  For the reasons stated on

26   the record, and as set forth below, the court DENIES the motions.

27

28

United States District Court
Northern District of California

**I.  Motion to Suppress Pretrial and In-Court Identifications**

   **A. Legal Standard**

   "Suggestive pretrial identification procedures may be so impermissibly suggestive as to taint subsequent in-court identifications and thereby deny a defendant due process of law."  *United States v. Love*, 746 F.2d 477, 478 (9th Cir. 1984) (per curiam).  The court conducts a two-step inquiry into pretrial identification procedures.  *Id.*  First, it must be assessed whether the procedures used were impermissibly suggestive.  If impermissibly suggestive procedures are found, then it must be determined whether the identification was nonetheless reliable.  *Id.*  To determine "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive[,] the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

   **B. Whether Photo or Video Lineups Were Impermissibly Suggestive**

      **1.  January 20, 2013 Photo Lineup**

   Ellis implies that the photo lineup shown to the eyewitness on January 20, 2013, which did not include Ellis, was unduly suggestive because the photo lineup included the individual whose name was used to rent the getaway car, Laron Means, who has not been charged in the January 20, 2013 shooting.  The witness cautiously identified Laron Means as the getaway driver in this first photo lineup, indicating "looks like driver of the getaway car, white four door.  Only thing different is [driver] had dreads, mustache & [small goatie]."  Gov't Ex. 98-A.[1]

---

[1]   To assign a unique identifier for each exhibit submitted by the parties in support of their briefs on the multiple defense motions, the court refers to each exhibit by docket number and exhibit letter.

Ellis does not contend that the January 20 photo lineup was suggestive by visually emphasizing Means's photo over the other photos in the six-pack.  Rather, Ellis argues that the police initially suspected that Means was the driver because the car was rented in his name, and that the fact that the witness initially identified Means, who was later determined not to be the driver, suggests that OPD steered the witness to that selection.  Reply, doc no. 110 at 1.  That is, Ellis argues that the witness identification of Means as the driver "reflects OPD's manipulation of the identification process to achieve whatever identification it wanted at the moment."  Ellis Suppl. Br., doc. no. 131 at 4.  This argument is purely speculative and has no basis in the record.  As the court ordered following oral argument on Ellis's motion to suppress pretrial and in-court identifications, the government produced transcripts of the audio recordings of the photo and video lineups shown to the eyewitness.  The transcript of the January 20 photo lineup does not reflect any suggestive behavior by Officer Molina in directing the witness to identify a particular individual.

Ellis fails to show that the January 20 photo lineup was impermissibly suggestive. In light of the record indicating that the witness was presented with photos of various different individuals who were reasonably similar in appearance to each other, and that the witness identification form contains a statement that the suspect may not be included in the photo array, as in *Love*, the January 20 photo lineup with Laron Means was not unduly suggestive.  Def. Ex. 82-C; Gov't Ex. 98-A.

## 2.  January 21, 2013 Photo Lineup

Ellis contends that the second photo lineup shown to the witness, on January 21, 2013, was impermissibly suggestive because the contrasts in physical appearance make Ellis stand out from the other individuals in the six-pack.  Ellis's complexion is noticeably darker than the other five individuals in the second lineup and he appears to be of a different race than several other individuals.  Def. Ex. 82-D at RD 0038; Gov't Ex. 98-B. Further, Ellis points out that four of the other five individuals (in position numbers two, four, five, and six) do not have long dreadlocks, emphasizing Ellis over the other lineup

1   participants because the witness earlier described the getaway driver as having a dark

2   complexion and dreads, rendering the photospread unduly suggestive.

3          At the hearing, the government noted that the witness was shown five different

4   sets of six-pack photo lineups on January 21, and that Ellis's photo was in the first set.

5   The government argued that Ellis's photo was not noticeably different in complexion or

6   hairstyle compared to other photos when considered among the total 30 photos shown to

7   the witness that day.  The transcript of the audio recording of the January 21 photo array

8   procedure indicates, however, that the witness was not shown all 30 photos at once;

9   rather, Officer Molina showed each six-pack to the witness one at a time.  Gov't Ex. 128-

10  2.  Thus, in determining whether the first six-pack containing Ellis's photo was

11  impermissibly suggestive, the fact that the witness was subsequently shown four other

12  photospreads has little weight.

13         Ellis has demonstrated that the January 21 photo lineup was impermissibly

14  suggestive because he appears to have a darker complexion than most of the other

15  individuals, and is only one of two individuals with dreadlocks in that six-pack.  Because

16  Ellis's appearance most closely matches the witness's earlier description of the driver,

17  this particular photo lineup emphasized the focus on a single individual, rendering the

18  identification procedure unduly suggestive.  *See United States v. Bagley,* 772 F.2d 482,

19  493 (1985).

20         Ellis also argues that both the January 20 and January 21 photospreads are

21  unduly suggestive for the additional reason that the police failed to admonish the witness

22  that the getaway driver might not be in the photospread.  The government points out,

23  however, that the written admonition on the photo lineup waiver statement explicitly

24  states that "photographs do not always depict the true complexion of a subject; they can

25  be darker or lighter."  *See* Def. Exs. 82-C at RD-0034 and 82-D at RD-0037.  The written

26  waiver form further states as follows: "the photographs may or may not include the

27  photograph of the person who committed the crime.  You are not obligated to identify

28  anyone."  *Id.*  The January 21 transcript also reflects that Officer Molina reminded the

4

witness that he showed the witness some photos the day before, and summarized the admonitions: "I read you a photo lineup waiver.  The same rules apply. . . . Just because I'm showing you the photographs shouldn't influence your judgment.  Maybe the person's here.  Maybe the person's not here.  You know, it's just as important to free innocent persons from suspicion as to identify guilty parties.  . . . The hair can change.  The beards, mustaches . . . and the complexion can be different."  Gov't Ex. 128-2.  In light of this record, neither the January 20 nor January 21 photospread is unduly suggestive for lack of proper instruction or admonition to the witness.

### 3.  Video Lineup

Ellis argues that the video of the physical lineup shown to the witness on May 29, 2013, is impermissibly suggestive because Ellis has a darker complexion than most of the other individuals in the lineup, is taller than most of the other individuals, and is the only one with a pronounced mustache and goatee.  The video recording of the physical lineup demonstrates that the identification procedure was not unduly suggestive because the individuals in the lineup have similar physical characteristics with a narrow range of differences among the individuals' complexion, hair length, dreads style, and facial hair.  Because the witness viewed the driver of the getaway car sitting inside the car, and did not see the getaway driver standing, the varying height of the lineup individuals does not create a suggestive element.

Ellis further argues that the witness was primed to identify Ellis in the video lineup because he recognized Ellis from the January 21 photospread.  Ellis contends that the transcript of the video lineup establishes that the witness recognized Ellis from the suggestive January 21 photospread.  Ellis Suppl. Br., doc. no. 131 at 5.  Before identifying Ellis in the video lineup, the witness said "I wonder [ ] if I ever seen these guys before in the picture you had brought before because number 4, it looks like I seen him."  The witness's statement suggests that he remembered Ellis, who was in position number 4 in the physical lineup, from the prior photospread.  The witness also said that number 4 was "the only one who looks familiar."  Ellis fails to point out, however, that Officer Molina

United States District Court
Northern District of California

1   instructed the witness to disregard any pictures he saw before and to think about the day

2   of the shooting, and that the witness said that position number 4 "do look like the guy

3   though, the driver." Gov't Ex. 128-4. Thus, the transcript reflects that when the video

4   lineup was played for the witness, he/she recognized Ellis from the day of the shooting as

5   the driver, not only from a prior photospread.

6         The fact that Ellis appeared in two different lineups does not, in and of itself,

7   render the latter lineup unduly suggestive. *See Bagley*, 772 F.2d at 493 (rejecting the

8   defendant's contention that display of two sets of photographs to witnesses was unduly

9   suggestive because only his picture was common to both sets of pictures, where the

10  court examined both sets of photographs and concluded that the content of photographic

11  display was not impermissibly suggestive); *United States v. Cook*, 608 F.2d 1175, 1178-

12  79 (9th Cir. 1979) (where a witness could not identify the defendant in a photo lineup, but

13  later identified him in a physical lineup, the court found that the possibility of

14  suggestiveness was "not so great to create a substantial likelihood of misidentification,"

15  and held that "there is nothing unusual about the lineup being conducted after a photo

16  spread, and nothing [p]er se illegal about this lineup"), *overruled on other grounds in Luce*

17  *v. United States*, 469 U.S. 38 (1984). Here, where the record reflects that the witness

18  explicitly stated that Ellis looked like the driver when shown the video lineup, Ellis's

19  appearance in a prior photo lineup, which was shown to the witness four months earlier,

20  did not give rise to a substantial likelihood of misidentification.

21        Ellis argues further that the witness was not admonished that the getaway driver

22  may not be present in the video lineup. The transcript of the May 29 audio recording of

23  the video lineup shows that Officer Molina gave admonitions "that the person may or may

24  not be in there. . . . And that the complexion can look different because of the lighting."

25  Gov't Ex. 128-4 at 2. Ellis argues that OPD failed to admonish the witness that he was

26  not obligated to identify anyone, that hair, beard and mustache styles can change, or that

27  the witness should not be influenced by the fact that the video was being shown to him.

28  The absence of these specific admonitions does not render the video lineup unduly

6

1    suggestive, given that Officer Molina admonished the witness that the person "may or

2    may not be in there."  Additionally, the video lineup card instructs, "If the suspect is not

3    present, do not mark any figure."  In light of both verbal and written admonishments that

4    the suspect may not be present, the video lineup was not unduly suggestive for lack of

5    admonishment.

6        **C. Whether Suggestive Photo Lineup Was Reliable**

7        Having determined that the January 21, 2013 photo array containing Ellis's photo

8    was impermissibly suggestive, the court applies the *Biggers* factors to determine whether

9    the identification from the photo array was nonetheless reliable under the totality of the

10   circumstances.  The record reflects sufficient indicia of reliability for the identification

11   testimony to be admitted at trial.

12       First, with respect to the opportunity of the witness to view the suspect at the time

13   of the crime, the witness gave a detailed description of the getaway driver as a man who

14   was "dark skinned with dreads past his shoulders, and he has a thick mustache and thin

15   goatee."  Def. Ex. 82-A at RD0026.  He also gave an accurate license plate number to

16   the police.

17       Ellis contends that the witness could not have had a good opportunity to view the

18   driver from inside the diner at 5907 Foothill Blvd.  In the newly released transcript of the

19   audio recording of the video lineup, the witness indicates that he/she saw the left side of

20   the driver as the car drove away down Seminary Avenue.  The map of the intersection,

21   as well as the surveillance video, support the witness's statement that when the car drove

22   down Seminary Avenue, the car would have passed directly in front of the witness,

23   exposing the driver's left-side profile.  Gov't Ex. 98-C; Def. Ex. 82-A at RD 0013.  Ellis

24   contends that the witness's statements establish that his/her window of opportunity to see

25   the driver would have been approximately five seconds, which is insufficient to allow for a

26   reliable identification.  Ellis cites no Ninth Circuit authority holding that a five-second

27   opportunity to view renders the identification per se unreliable, but relies on non-binding

28   district court decisions recognizing that an opportunity to observe as long as 45 seconds,

United States District Court
Northern District of California

1    where the witness could only see the suspect "out of the side of his eye", did not support

2    a finding of reliability.  Reply (doc. no. 110) at 8 (citing *United States v. Smith*, 429 F.

3    Supp. 2d 440, 453 (D. Mass. 2006)).  These arguments about the inadequate length of

4    time to view the driver can be raised at trial on cross-examination of the witness, but do

5    not render the identification unreliable.  Because the witness stated that he/she could see

6    the driver's profile and provided specific details, his/her opportunity to see the driver

7    supports a finding of reliability.  Def. Ex. 82-A at RD 0026.

8          Second, with respect to the witness's degree of attention, the record reflects that

9    the witness was paying focused attention at the time of the crime, signaled by the

10   accurate license plate number given to the police and the detailed description of the

11   getaway driver.  Ellis argues that courts have long recognized that violence and stress

12   are likely to distort a witness's perception of events, so that the witness's degree of

13   attention and level of detail cannot be relied upon, but this general argument does not

14   inform the inquiry into this particular witness's degree of attention.  Ellis also argues that

15   the fact that the witness focused on the two gunmen and the license plate of the getaway

16   car indicates that he paid less attention to the driver's appearance.  It is likely, however,

17   that the witness would have seen the gunmen before they entered the car, and then seen

18   the license plate, which would have been on the end of the car, at a different time than

19   when the witness saw the driver's profile as the left side of the car passed in front of the

20   witness.  Here, the accuracy of the license plate information and degree of detail reported

21   by the witness indicate that the degree of attention paid by the witness is significantly

22   high.

23         Third, with respect to the accuracy of the witness's prior description of the criminal

24   at the time of the crime, Ellis argues that because the witness identified someone else as

25   the driver on the day of the shooting, this fact weighs against a finding of reliability.  The

26   record shows that although the witness incorrectly identified Laron Means as the possible

27   getaway driver in the January 20 photo lineup, he qualified his response by asserting that

28   the getaway driver had facial hair and dreads.  Gov't Ex. 98-A.  The witness's initial

8

United States District Court
Northern District of California

misidentification of Means as the driver is considered in light of the accuracy of the witness's description of the driver's physical characteristics.  For the January 20 lineup, the witness was instructed not to focus on the hair and only on the face, so he identified an individual without a mustache, goatee and dreadlocks whose face "looked like it could have been" the driver.  Gov't Ex. 128-1 at 5.  This earlier misidentification of Means does not render the subsequent identification of Ellis unreliable, in light of the witness's detailed description of the driver's physical appearance.

Fourth, with respect to the level of certainty demonstrated by the witness, during the January 20 photo lineup, the record reflects that the witness qualified his/her identification of Means as the driver by indicating that the person whom he/she identified lacked dreadlocks, mustache and a goatee.  During the January 21 photo lineup, the witness did not definitively identify Ellis as the driver of the car, stating that it would be helpful to see his profile.  Def. Ex. 82-D at RD 0037.  Four months later, when shown the video lineup with the side profile, the witness identifies Ellis with a "?" on the identification sheet, followed by the statement, "I think number four resembles the driver."  The witness's statement during the January 21 photo lineup indicating that Ellis may have been the driver of the car, though not completely certain, demonstrates some certainty, particularly compared to the uncertain identification of Means during the January 20 lineup, as the witness gave a detailed description of the driver and stated that Ellis's face "sort of" looked like the driver.  Gov't Ex. 128-2 at 3.  The government notes that the witness did not hesitate to say he/she did not recognize anyone when shown four additional photo lineups in which Ellis did not appear; out of the 30 photos shown to the witness on January 21, 2013, Ellis was the only person identified that day.  Although the witness was not 100% certain in identifying Ellis in the January 21 photospread, the witness showed some level of certainty compared to the earlier identification of Means in the January 20 photospread.

Fifth, with respect to the length of time between the crime and the confrontation, the January 21 photo lineup containing Ellis's photo was shown to the witness the day

1   after the January 20, 2013, shooting.  This close proximity in time supports the reliability

2   of the identification.

3          Under the totality of the circumstances, the witness's identification of Ellis in the

4   January 21 photo array is supported by sufficient indicia of reliability to render the

5   identification admissible.

6      **D.  Right to Counsel**

7          Ellis seeks suppression of the pretrial identification on the separate ground that the

8   use of the recorded video lineup violated his Sixth Amendment right to counsel.  Although

9   the witness was not present at the physical lineup, which was conducted on January 23,

10  2013, Ellis is concerned about what occurred when the witness was shown the videotape

11  of the lineup without counsel present, on May 29, 2013.  Although there is no Ninth

12  Circuit authority directly controlling on the issue whether the presence of counsel is

13  required at a showing of a previously videotaped lineup, in *United States v. Barker*, 988

14  F.2d 77, 78 (9th Cir. 1993), the court held that a defendant has no right to have counsel

15  present when a witness is shown a still photograph of a lineup, following the holding of

16  *United States v. Ash*, 413 U.S. 300 (1973).   Because a video recording of a lineup is

17  similar to a photo of a lineup, and unlike a live lineup where the witness is present, under

18  the reasoning of *Barker*, Ellis is not entitled to have counsel present when the police

19  show a previously recorded videotape of a lineup to a witness.  *See also United States v.*

20  *Amrine*, 724 F.2d 84, 86 (8th Cir. 1983) (no right to have counsel present when witnesses

21  were shown a videotape of a lineup).  Furthermore, the transcript of the audio recording

22  taken when the videotaped lineup was played for the witness raises no concerns about

23  police misconduct or suggestiveness in showing the videotape to the witness.

24          For the foregoing reasons, Ellis's motion to suppress pretrial and in-court

25  identifications by the witness is DENIED.  Doc. no. 82.

26

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

## II. Motion for Disclosure of Identity and/or Communications of Confidential Informant

Upon supplemental briefing and argument on defendants' motion for disclosure of the identity and/or communications of the confidential informant ("CI"), doc. no. 80, the court determines that the government's interest in protecting the identity of the informant outweighs defendants' need for the information to prepare their defense under the *Roviaro* balancing test. *Roviaro v. United States*, 353 U.S. 53, 59-61 (1957). The court has considered the following factors in determining whether the CI's identity and/or communications must be disclosed: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure. *United States v. Gonzalo Beltran*, 915 F.2d 487, 488-89 (9th Cir. 1990) (per curiam).

First, having conducted an independent in camera review of the unredacted search warrant affidavits and having reviewed information provided by the government in an ex parte affidavit, the court finds, on the present record, that the CI played no role in the offenses with which defendants are charged and was not a percipient witness to the charged crimes. Second, the informant provided information which supported probable cause for issuance of the search warrants and the arrest warrant in dispute, and the government represents that it will not call the CI to testify at trial. Under Ninth Circuit authority, "'a trial court need not require federal agents to disclose the identity of a reliable informant where the sole ground for seeking that information is to establish the existence of probable cause for arrest.'" *United States v. Fixen*, 780 F.2d 1434, 1439 (9th Cir. 1986) (quoting *United States v. Mehciz*, 437 F.2d 145, 149 (9th Cir. 1971)). Because the CI will not give any testimony, and the government represents that it will not rely on information provided by the CI to prove the charged conduct at trial, the information provided by the informant will not be considered by the jury in determining guilt or innocence. *See McCray v. Illinois*, 386 U.S. 300, 311 (1967). Third, the ex parte affidavit submitted by the government provides specific evidence to demonstrate a strong

United States District Court
Northern District of California

1  public interest in nondisclosure based on risk to the informant's safety if his/her identity

2  were disclosed, particularly in light of the violent nature of the crimes charged against

3  defendants; law enforcement's credibility with cooperating informants; and the integrity of

4  other ongoing criminal investigations.

5       Having reviewed the ex parte affidavit, the court also determines that the contents

6  of the CI's communications with law enforcement tend to reveal the informant's identity

7  and therefore may also be withheld from disclosure. *United States v. Napier*, 436 F.3d

8  1133, 1136 (9th Cir. 2006). Recognizing defendants' interest in challenging the probable

9  cause showing of the search warrant affidavits, the court finds that defendants' interest is

10  outweighed by the government's interest in nondisclosure of the informant's identity and

11  information that would tend to reveal the informant's identity. *See Napier,* 436 F.3d at

12  1136.

13       The evidence in the record, including the unredacted search warrant and arrest

14  warrant affidavits and the ex parte affidavit submitted by the government, is sufficient to

15  determine that the confidential informant was not a percipient witness and will not testify,

16  and that disclosure of the informant's identity, or the informant's communications, is not

17  "'relevant and helpful to the defense of the accused, or is essential to a fair determination

18  of a cause.'" *United States v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993) (quoting

19  *Roviaro*, 353 U.S. at 60-61). The government also represents that it will comply with its

20  ongoing obligation to provide any *Brady* disclosures related to the informant. Therefore,

21  the court DENIES defendants' request for an in camera hearing, and DENIES the motion

22  for disclosure of the CI's identity and/or communications.

23  **III. Motion to Suppress Evidence from Illegal Search of Apartment**

24       Ellis, on behalf of all defendants, moves to suppress all evidence seized during the

25  search of Apartment 212 and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154

26  (1978). Doc. no. 81. Ellis asserts the following grounds for suppression: the search

27  warrant affidavit relied exclusively on an informant tip that was not sufficiently reliable; the

28  search warrant affidavit failed to establish a reasonable nexus between any defendant

United States District Court
Northern District of California

1   and the apartments that were searched, or a nexus between Ellis and the alleged

2   criminal activity; the search warrant affidavit omitted information that a probation search

3   had been conducted before the search warrant was issued; and the warrant was

4   overbroad.

5          As an initial matter, Ellis has sufficiently demonstrated that he has standing to

6   challenge the search of Apartment 212.  The factual assertions in the search warrant

7   affidavit establish that Ellis resided in Apartment 212, and his privacy interest in

8   Apartment 212 is further established by the items of his clothing that were found in the

9   apartment.  Ellis also points to police reports indicating that he resided in Apartment 212.

10  This evidence is sufficient to establish that Ellis had a legitimate privacy interest in the

11  searched apartment.  *See United States v. Singleton*, 987 F.2d 1444, 1447-49 (9th Cir.

12  1993).

13         First, Ellis argues that the search warrant relies solely on an informant's tip, which

14  lacked sufficient reliability and basis of knowledge of the alleged facts.  Having reviewed

15  the sealed search warrant affidavit, the court determines that the informant's tip was

16  sufficiently reliable on the ground that he or she provided uniquely knowable facts.  *See*

17  *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001) (citing *Illinois v. Gates*, 462

18  U.S. 213, 238 (1983)).

19         Second, Ellis argues that the search warrant affidavit, as redacted, fails to provide

20  any factual nexus between himself and Apartment 212, or between any of the defendants

21  and any of the apartments.  However, the informant's statements contained in the sealed

22  portions of the search warrant affidavit sufficiently establish probable cause that evidence

23  of criminal activity would be found in Apartment 212.

24         Third, Ellis contends that the search warrant affidavit omitted a material fact about

25  a probation search that would have highlighted the lack of probable cause to issue the

26  search warrant for Apartment 212, and seeks a *Franks* hearing on the affiant's omission.

27  Ellis cites a probation revocation petition that states that three guns were recovered

28  during a "probation search" of Apartment 212 on January 21, 2013, the day before OPD

records indicate that police first entered Apartment 212. Def. Ex. 81-B. The revocation petition refers to an Oakland Police Dept. Report, #13-003748, which is not included among Ellis's supporting exhibits. The government submitted an Oakland Police Department document entitled RD No. 13-003748, which states on its face that it is a "SEARCH WARRANT INVENTORY" listing the evidence that was seized from Apartment 212. Gov't Ex. 95-C at RD-000320. Thus, the police records on which the probation officer apparently relied clearly state that a warrant search, not a probation search, was conducted on Apartment 212. Furthermore, the Incident Recall report indicates that the apartments were not searched prior to issuance of the warrant search. Gov't Ex. 95-A. The police records in evidence demonstrate that the reference to a probation search in the probation revocation petition was a clerical error by the probation officer, and that the affiant did not intentionally or recklessly make false statements in the search warrant affidavit. Thus, an evidentiary hearing is not warranted.

Fourth, Ellis argues that evidence seized from Apartment 212 (as well as the other apartments) must be suppressed because the warrant was facially overbroad, pointing to a photo of the warrant that was left at the scene, which contained no limitations and no description of the items to be seized and therefore appears to be a general warrant. Def. Ex. 81-C. The government explains that the warrant left at the scene was redacted to prevent destruction of evidence by suspects still at large. Gov't Ex. 95-D (Milina Decl.). The unredacted search warrant in the record specifies the property and evidence to be seized, and does not list overbroad, catchall categories subject to search and seizure. Gov't Ex. 95-B. On its face, the warrant does not lack particularity.

Because the sealed portions of the search warrant affidavit sufficiently establish probable cause, it is not necessary to reach the arguments about application of the good faith exception here. Defendants' motion to suppress evidence seized during the search of Apartment 212, and request for a *Franks* hearing, is DENIED.

**IV. Motion to Suppress Evidence Seized Pursuant to Arrest**

Ellis seeks suppression of all evidence seized pursuant to his January 22, 2013 arrest, on the ground that the arrest warrant was not supported by probable cause.  Doc. no. 77.  Specifically, Ellis seeks suppression of cell phone evidence seized during his arrest, the video of the physical lineup which the government obtained only as a result of Ellis's arrest, and all evidence of Ellis's jail communications.  Ellis also seeks a *Franks* hearing to question the officer who obtained the arrest warrant about a false or misleading statement about Ellis's criminal history.

Ellis challenges the arrest warrant on two grounds: (1) the affidavit erroneously states that Ellis had a prior conviction for possession of assault rifles, which was material to the probable cause determination; and (2) the other evidence relying on hearsay information from an unidentified confidential informant does not create probable cause to connect Ellis to criminal activity.

First, it is undisputed that the arrest warrant affidavit incorrectly stated that Ellis was convicted of possessing assault rifles.  However, Ellis does not demonstrate that this misstatement was made deliberately or in reckless disregard for the truth.  The arrest warrant affidavit certainly omits relevant facts that give context to the search that produced the assault weapons, but the omission does not support a finding of deliberate misrepresentation or that the statement was knowingly false, given that the affidavit cited a specific police report that could have been easily checked and verified.

Ellis concedes that his criminal history shows that he was convicted of drug possession for sale with a gun enhancement, but Ellis contends that the misstatement about a conviction on assault weapon charges was material to the probable cause determination supporting issuance of the arrest warrant.  In light of the record, Ellis overstates the materiality of the erroneous reference to a conviction for possessing assault weapons: assault weapons were not used in the assault on Officer K. in 2013, and a prior conviction for gun possession in 2008 (whether a handgun or assault weapon) would not support a likelihood that Ellis was connected to Officer K.'s shooting

15

1    nearly five years later.  More likely, the prior gun conviction would have been considered

2    relevant to establish Ellis's familiarity with guns, which was also established by other

3    facts in the affidavit, including Ellis's admission that the assault rifles belonged to him.

4    Gov't Ex. 99-A at RD-003415 (in support of opposition to motion to suppress, doc. no.

5    105).  Here, the probable cause determination underlying the arrest warrant was

6    supported by facts, other than Ellis's prior conviction, set forth in the affidavit.

7            Second, having reviewed the sealed portions of the affidavit, the court concludes

8    that facts other than Ellis's criminal history supported probable cause to arrest Ellis, who

9    was believed to be the driver of the getaway car in the January 20, 2013 shooting of

10   Victim 1, and believed to be involved in storing Officer K.'s stolen guns in his apartment.

11   The CI's familiarity with the suspects' street names, ability to identify defendants from

12   CRIMS booking photos, and the specificity of the details provided by the CI provide

13   sufficient indicia of reliability and a basis of knowledge of the information that was

14   conveyed to Officer Valle.  Furthermore, the evidence recovered from the search of

15   Apartment 212 corroborated the CI's statements that the gun taken from the police officer

16   was inside Ellis's apartment, and supported probable cause to believe that Ellis was

17   involved in some way with Officer K.'s shooting, such as Officer K.'s stolen firearms; keys

18   to the Dodge Avenger rental car that was the suspected getaway car in the January 20,

19   2013 shooting; and clothes indicating that Ellis resided in Apartment 212.

20           In light of the record, the court determines that the arrest warrant was supported

21   by probable cause.  Because the facts presented in the affidavit support probable cause,

22   it is not necessary for the court to reach the arguments about the good faith exception

23   under *United States v. Leon*, 468 U.S. 897 (1984).  Ellis's motion to suppress evidence

24   seized pursuant to his arrest is DENIED.  Ellis's request for a *Franks* hearing is also

25   DENIED.

26   **V.  Motion to Suppress Evidence Seized from Digital Devices**

27           Ellis, on behalf of all defendants, moves to suppress all evidence seized from the

28   searches of cell phones or other digital devices seized from the defendants or seized

United States District Court
Northern District of California

1   from any place and searched without a warrant.  Doc. no. 79.  Defendants contend that

2   because no warrant was obtained to search the contents of the individual cell phones or

3   computers, any evidence seized from those devices should be suppressed under the

4   holding of *Riley v. California*, 134 S. Ct. 2473, 2489, 2493 (2014), in which the Supreme

5   Court recognized that "[t]he storage capacity of cell phones has several interrelated

6   consequences for privacy," and held that a warrant is generally required before searching

7   information on a cell phone, even when a cell phone is seized incident to arrest.

8   Defendants do not dispute that the cell phones and devices at issue were searched more

9   than one year before *Riley* was decided.

10        Of the 23 electronic devices that were seized, the government has identified only

11   two phones from which it will offer evidence, and defendants concede that the instant

12   motion to suppress is limited to information obtained from those two phones: an LG

13   phone recovered from Apartment 108 that contains "inculpatory photographs of

14   McDaniel" and a ZTE phone allegedly seized from Ellis at the time of his arrest.  Reply

15   (doc. no. 108) at 2.  Although the government contends that defendants failed to meet

16   their burden to establish an expectation of privacy against the search of either device, the

17   record sufficiently establishes McDaniel's standing to challenge the search of the

18   contents of the LG phone and Ellis's standing to challenge the content search of the ZTE

19   phone.

20        With respect to the LG phone recovered from Apartment 108, Oakland police

21   obtained a warrant to search Apartment 108 which authorized the seizure of "cell phones,

22   cell phone records, or other media that may contain real or simulated acts of violence."

23   Gov't Ex. 94-D.  Defendants argue that the search warrant authorizes the search of the

24   apartment and seizure of a cell phone, but the warrant does not specifically authorize the

25   search of the contents of the cell phone, as generally required by *Riley*.  Because *Riley*

26   had not yet been decided at the time of the search in question, and controlling state law

27   precedent under *People v. Diaz*, 51 Cal. 4th 84 (2011), allowed the warrantless search of

28   the contents of a phone seized incident to arrest, it was reasonable for the police to

search the contents of a phone seized pursuant to a search warrant.  Thus, the search of the data contained on the LG cell phone found in Apartment 108, the seizure of which was authorized by a search warrant, is not subject to the exclusionary rule.  *Davis v. United States*, 131 S. Ct. 2419, 2429 (2011) ("Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.")).

With respect to the ZTE phone, the government has shown that Oakland police specifically obtained a search warrant for the phone that was found on Ellis's person. The warrant was issued about an hour after Ellis was arrested after emerging from Apartment 112, and authorized the search of "[a] cellular telephone thought to belong to Purvis Ellis Metro PCS with the telephone number of [ ] registered to Wendell Stephens." Gov't Ex. 94-E.  The government points out that the phone number identified in the warrant is the same number of the phone that was searched.  Gov't Ex. 94-F.

Even if the search warrants, which authorized the pre-*Riley* search of cell phones and cell phone records in Apartment 108 and the search of Ellis's phone as described in the search warrant for Apartment 112, were deemed insufficient to validate the search of the cell phone contents in light of *Riley,* the police officers had a good faith basis to believe they were authorized to search the phones because they reasonably relied on the search warrants.  *United States v. Crews*, 502 F.3d 1130, 1136 n.4 (9th Cir. 2007) ("The good faith reliance exception recognizes that if 'the officer is acting as a reasonable officer would and should act in similar circumstances, excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.' Therefore, punishment is unwarranted where there can be no deterrent effect.") (quoting *Leon*, 468 U.S. at 920)).  In light of *Diaz*, 51 Cal. 4th 84, the searches of the cell phone contents were reasonable under controlling authority at the time, which permitted warrantless cell phone searches incident to arrest and did not require a warrant to search the contents of cell phones.  In light of the evidence in the record, the searches of the cell phone data were conducted in good faith reliance upon objectively reasonable search

1  warrants that specified "cell phones, cell phone records" and "[a] cellular telephone

2  thought to belong to Purvis Ellis."  Gov't Exs. 94-D and 94-E.

3       Furthermore, the search of the contents of the ZTE phone found on Ellis was valid

4  as a probation search.  *See People v. Schmitz*, 55 Cal. 4th 909, 917 (2012) ("[i]n

5  California, probationers may validly consent in advance to warrantless searches in

6  exchange for the opportunity to avoid service of a state prison term.").  Officer Tran

7  researched Ellis's criminal history and learned that Ellis had a suspicionless search

8  clause before extracting data from the SD card and the SIM card on the ZTE phone.

9  Gov't Ex. 94-C.  Under *Diaz*, which was controlling authority at the time of the search, a

10  cell phone found on a defendant was "immediately associated with [the defendant's]

11  person," such that the warrantless search of a cell phone pursuant to a lawful arrest was

12  valid.  *Diaz*, 51 Cal. 4th at 90 (citing *United States v. Chadwick,* 433 U.S. 1, 15 (1977)).

13  Although the government does not cite authority extending *Diaz* to permit the content

14  search of a cell phone pursuant to a probation search, an unpublished court of appeal

15  decision, issued before *Riley* was decided, applied the rationale of *Diaz* to hold that a

16  warrantless search of the digital contents on a cell phone pursuant to a probation search

17  condition was a reasonable search and seizure.  *People v. Liebel*, No. F065133, 2013

18  WL 5779624, at *3 (Cal. Ct. App. Oct. 24, 2013), *review denied* (Jan. 15, 2014).  In light

19  of this reasoning by a state appellate court, it was reasonable for the police to search

20  Ellis's cell phone contents pursuant to the search conditions of his probation.  *Id.* at *4

21  ("In California, probationers may validly consent in advance to a probation search.")

22  (citing *People v. Woods*, 21 Cal. 4th 668, 674 (1999)).  Even if the search of the contents

23  of the ZTE cell phone was not a valid probation search, the officers had a good faith

24  basis to believe they were authorized to search the contents of Ellis's phone under the

25  four-way search condition of his probation.

26       The government also asserts that the ZTE phone found on Ellis's person was

27  searched incident to a lawful arrest, but Ellis argues that the search of the cell phone

28  contents was not incident to arrest because the search was conducted more than six

United States District Court
Northern District of California

19

hours after Ellis was arrested.  Ellis has demonstrated that this six-hour delay rendered the cell phone content search too remote in time from his arrest under the recent authority of *United States v. Camou*, 773 F.3d 932, 937 (9th Cir. 2014), where the Ninth Circuit held that the search of the contents of a cell phone one hour and twenty minutes after the defendant's arrest was not a search incident to arrest because it was too far removed in time.  Recognizing that *Camou* was decided after the search in question, the court determines that the search of Ellis's phone was too remote in time from the arrest even under *Diaz,* the controlling authority at the time of Ellis's arrest.  The six-hour delay in searching Ellis's phone is significantly longer than the 90-minute delay found reasonable in *Diaz,* where the officers searched the text message folder of a cell phone they took from the defendant's person after making the arrest, approximately 90 minutes after arresting him and transporting him to a detention facility.  51 Cal. 4th at 88.  Here, the government has not offered evidentiary support or legal authority for its contention that the six-hour delay was reasonable in light of the circumstances.  Thus, the search of Ellis's ZTE cell phone was not sufficiently contemporaneous with his arrest to qualify as a search incident to arrest.

As a separate and independent ground for admissibility of the contents of the LG and ZTE cell phones at issue, the photo/video evidence found on the cell phones is admissible under the inevitable discovery doctrine.  *See United States v. Lang*, 149 F.3d 1044, 1047 (9th Cir.) (citing *Nix v. Williams*, 467 U.S. 431 (1984)), *amended by* 157 F.3d 1161 (9th Cir. 1998).  The investigating officers stated in the search warrant affidavits that based on their experience, they knew that "individuals who commit crimes . . . will also keep records in their computer and writings such as, but not limited to, diary or log, about crimes that they are involved in."   Gov't Exs. 94-D and 94-E.  The evidence in the record supports a "reasonable probability of discovery" of the contents of the cell phones found in Apartment 108 and on Ellis's person, as records kept by suspects in the attempted murder of Officer K.  *See Lang*, 149 F.3d at 1047 (the inevitable discovery doctrine is a factual inquiry that requires the district court "to determine whether a reasonable

United States District Court
Northern District of California

1   probability of discovery existed prior to the unlawful conduct, based on the information

2   possessed and investigations being pursued at such time"). This case is distinguishable

3   from *Camou*, declining to apply the inevitable discovery doctrine in a child pornography

4   prosecution where the border patrol agents did not pursue an investigation into the alien

5   smuggling crime for which the defendant was arrested and would not have applied for a

6   warrant to search his phone for evidence of smuggling. 773 F.3d at 944. Here, by

7   contrast, the Oakland police were actively investigating the attempted murder of Officer

8   K. and had obtained search warrants which specifically identified and authorized the

9   search of cell phones before searching the contents of the cell phones. This case does

10  not present a situation, as in *Camou*, where a law enforcement officer failed to obtain a

11  warrant and conducted a warrantless search notwithstanding evidence that probable

12  cause existed to support the issuance of a search warrant had one been sought.

13  Because a separate search warrant was not required under clearly established law

14  before *Riley* was decided, the Oakland police acted reasonably by not applying for a

15  separate search warrant to search the contents of the cell phones, in addition to the

16  search warrants specifically authorizing the search for cell phones or cell phone records

17  in Apartment 108, and Ellis' Metro PCS cell phone as identified in the search warrant for

18  Apartment 112. Gov't Exs. 94-D and 94-E.

19          For the foregoing reasons, defendants' motion to suppress evidence seized from

20  digital devices is DENIED.

21  **VI. CONCLUSION**

22          As more fully set forth above, the following motions are DENIED: Ellis's motion to

23  suppress pretrial and in-court identifications (doc. no. 82); defendants' motion for

24  disclosure of identity of confidential informant (doc. no. 80); defendants' motion to

25  suppress evidence from search of Apartment 212 and for a *Franks* hearing (doc. no. 81);

26  Ellis's motion to suppress evidence seized pursuant to arrest and for a *Franks* hearing

27  (doc. no. 77); and defendants' motion to suppress evidence seized from digital devices

28

1   (doc. no. 79).  Because the court denies the requests for an evidentiary hearing,

2   defendants' application for issuance of Rule 17(c) subpoena is DENIED (doc. no. 84).

3        **IT IS SO ORDERED.**

4   Dated: October 29, 2015

5   _____

6   PHYLLIS J. HAMILTON
    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28