UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br>                Plaintiff,<br><br>    v.<br><br>PURVIS ELLIS, DEANTE KINCAID, JOSEPH PENNYMON, and DAMIEN MCDANIEL,<br>                Defendants. | Case No. 13-cr-00818-PJH   (DMR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH**<br><br>Re: Dkt. No. 233 |

Alameda County Sheriff's Office ("ACSO") moves to quash a subpoena served by Defendants Purvis Ellis, Deante Kincaid, Joseph Pennymon, and Damien McDaniel. [Docket No. 233.] Following a September 28, 2016 hearing, ACSO lodged the responsive materials for in camera review, as well as a supplemental declaration pursuant to the court's instructions. The court also conducted an ex parte evidentiary hearing under seal with ACSO on March 9, 2017. Having reviewed the documents in camera and the evidence presented through declarations and at the hearing, the court now enters the following order granting in part and denying in part ACSO's motion to quash. The court will separately file under seal an order describing the documents and information that shall be produced to Defendants in response to the subpoena.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendants Ellis, Kincaid, Pennymon, and McDaniel are charged with racketeering as associates of the alleged "Sem City" street gang in East Oakland, California. The indictment alleges Defendants' involvement in two shooting incidents in January 2013 in furtherance of the racketeering conspiracy. Defendants are currently detained pending trial in Glenn E. Dyer Detention Facility, which is operated by ACSO.

In January 2014, the government, through the FBI, requested records for the four

1  Defendants from ACSO's jail Classification Unit. [Docket No. 242-2 (Molloy Decl., Sept. 20,
2  2016) ¶ 13.] In response, ACSO provided the FBI with heavily redacted jail intake classification
3  reports. *Id*. The classification reports are two-page forms which are entitled "Alameda County
4  Sheriff's Department Classification Report." The government subsequently produced the redacted
5  reports to Defendants in discovery; Defendants then attached copies of three of them to their
6  opposition to ACSO's motion to quash the subpoena. Opp'n Exs. A, B. The first page of the
7  classification report form contains a number of yes/no questions, including "Are you a
8  member/associate of a jail/prison gang?" The bottom of the first page contains spaces for the
9  signatures of the inmate and classification officer. Opp'n Exs. A, B. A classification report dated
10 July 27, 2013 indicates that Defendant Ellis responded "no" to the question about his membership
11 in a jail/prison gang, but contains a handwritten notation that he is a member of the Case Boy and
12 5900 Seminary gangs. Opp'n Ex. B. Defendant Kincaid's February 14, 2013 classification report
13 indicates that he also responded "no" to the question about his membership in a jail/prison gang.
14 It contains no other notations about his gang membership. Opp'n Ex. A.

15 Defendants filed a Federal Rule of Criminal Procedure 17(b) ex parte application for
16 issuance of a document subpoena to ACSO, which the court granted on August 16, 2016. [Docket
17 Nos. 220, 224.] The subpoena sought the following categories of information:

> All booking records and jail classification documents, including interview questions and responses, photographs, videos, fingerprints, intake forms, housing requests and/or assignments, "keep separate from" (i.e. KSF) information, and all information stored in Alameda County CRIMS (Consolidated Records Information Management System) for or related to [Defendants Ellis, Kincaid, Pennymon, and McDaniel].

22 Mot. Ex. A (Subpoena).

23 ACSO moved to quash the subpoena in its entirety. It argues that the subpoena does not
24 satisfy Rule 17(c)'s requirements of relevancy, admissibility, and specificity. *See United States v.*
25 *Nixon*, 418 U.S. 683, 689 (1974). It also asserts that its jail classification records are highly
26 confidential, sensitive, and "core to the safety and security of detention facilities and the inmates
27 therein," and that Defendants' need for the records does not overcome ACSO's compelling
28 interest in inmate safety and jail security. Mot. 2. According to ACSO, disclosure of the records

would "jeopardize the safety and security of the detention facilities, violate the rights of inmates, and ultimately place the ACSO staff, jail visitors, and especially inmates in danger." *Id*. ACSO argues that the records are protected by the official information privilege. It submitted the declaration of Sergeant Miguel A. Campos in support of its privilege claim. [Docket No. 233 at 24-28 (Campos Decl., Aug. 23, 2016).][1]

The court conducted a hearing on September 28, 2016. It held that the Campos declaration satisfied the requisite threshold to obtain in camera review for purposes of the official information privilege pursuant to *Kelly v. City of San Jose*, 114 F.R.D. 653, 670 (N.D. Cal. 1987). [Docket No. 255 (Sept. 28, 2016 Hr'g Tr.) 43-44.] ACSO timely lodged the documents for in camera review. It also submitted a supplemental declaration by Lt. Jared A. Hattaway, the manager of the Classification Unit and custodian of records for ACSO's Glenn E. Dyer Jail and Santa Rita Jail. In his declaration, Hattaway describes Classification Unit procedures. [Docket No. 249 at 3-5 (Hattaway Decl., Sept. 29, 2016).]

The documents submitted for in camera review include one or more unredacted classification reports for each of the four Defendants. They appear to be different versions of the two-page redacted classification report forms discussed above, which were originally produced by ACSO to the government, and subsequently disclosed in discovery to Defendants. The second pages of the classification report forms contain abbreviations, codes, and acronyms. In order to understand and assess the relevance of this information, as well as weigh the Defendants' need for the information against ACSO's need for confidentiality, the court ordered ACSO to file an ex parte declaration under seal explaining the information on the second pages of all versions of the classification report forms submitted for in camera review. The court also ordered ACSO to explain why disclosure of the second pages of the classification report forms would "jeopardize

---

[1] In his declaration, Campos states that he works in the Classification Unit. Campos Decl. ¶ 1. According to Campos, ACSO has collected and maintained the confidentiality of the records in question and he has personally reviewed those records. Campos Decl. ¶¶ 8, 9. He describes the confidentiality interests at stake, noting the security and safety risks that he asserts disclosure would pose to inmates, jail staff, visitors, the jail itself, and the public. *Id*. at ¶¶ 6-7, 10-13. Further, he states that any protective order would be futile, since Defendants seek to use this information in court and in connection with pretrial motions. *Id*. at ¶ 11. Finally, Campos describes the harm that would result if the materials are produced to Defendants. *Id*. at ¶¶ 12, 13.

the safety and security of the detention facilities" and "place the ACSO staff, jail visitors, and . . . inmates in danger." [Docket No. 267 (quoting Mot. at 2).] ACSO timely filed under seal a second declaration of Hattaway. [Docket No. 270 (Hattaway Decl., Feb. 8, 2017, "Second Hattaway Decl.") (under seal).]

## II.     LEGAL STANDARDS

### A.  Federal Rule of Criminal Procedure 17(c)

Federal Rule of Criminal Procedure 17(c) governs the issuance of subpoenas in federal criminal proceedings. Under Rule 17(c), a party may subpoena a witness to produce "any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). A court may quash a Rule 17(c) subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim P. 17(c)(2).

The Supreme Court has explained that a subpoena for documents in criminal cases is "not intended to provide a means of discovery for criminal cases." *Nixon*, 418 U.S. at 698 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)); *see also United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) ("a Rule 17(c) subpoena is not intended to serve as a discovery tool, or to allow a blind fishing expedition seeking unknown evidence" (internal citation omitted)). Rather, "[i]ts chief innovation [is] to expedite the trial by providing a time and place before trial for the inspection for subpoenaed materials." *Nixon*, 418 U.S. at 698-99 (citing *Bowman*, 341 U.S. at 220). The proponent of a Rule 17(c) pretrial subpoena must "clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *Id*. at 700; *see also United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981). The proponent must also show that the materials sought "are not otherwise procurable reasonably in advance of trial by exercise of due diligence," that "the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial," and that "the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700 (citing *United States v. Iozia*, 13 F.R.D. 335, 338) (S.D.N.Y. 1952)). "[A] Rule 17(c) subpoena should be quashed or modified if it calls for privileged matter." *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006) (quotation and citation omitted). The

4

decision whether to enforce a subpoena is left to the discretion of the trial court. *Nixon*, 418 U.S. at 702.

### B. Official Information Privilege

"[T]he federal privilege applicable to the government interest in preserving confidentiality of law enforcement records has various names," including the "official information privilege" and the "law enforcement privilege." *Deocampo v. City of Vallejo*, Civ. No. S-06-1283 WBS GGH, 2007 WL 1589541, at *4 (E.D. Cal. June 1, 2007) (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1991) and *In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988)); *see also United States v. McGraw-Hill Cos., Inc.*, No. CV 13-779-DOC (JCGx), 2014 WL 1647385, at *5 n.2 (C.D. Cal. Apr. 15, 2014) (describing different labels applied by courts to the privilege). The purpose of the qualified privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation*, 856 F.2d at 484.

The party asserting the privilege must make a "substantial threshold showing." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (citation omitted). In order to fulfill this requirement, the party opposing disclosure must submit a declaration or affidavit from a "responsible official with personal knowledge of the matters to be attested to in the affidavit." *Id.* (citation omitted). The affidavit must include:

> 1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Kelly*, 114 F.R.D. at 670. If the party asserting the privilege "meets the threshold requirements, the court will order an in camera review of the material and balance each party's interests," *Soto*, 162 F.R.D. at 613 (citations omitted), i.e., whether the government's need for confidentiality

5

outweighs the requesting party's need for the information.

## III. ANALYSIS

### A. Rule 17(c) Showing

At the hearing, Defendants narrowed the scope of the subpoena to "jail classification records." Hr'g Tr. 4-5. As set forth above, as the proponents of the Rule 17(c) subpoena, Defendants must establish that their subpoena seeking jail classification records is (1) relevant, (2) admissible, and (3) specific.

As to the first requirement, Defendants contend that the jail classification records are relevant to the existence of Sem City and the participation by Defendants in Sem City, which is the alleged RICO enterprise in this case. Defendants originally argued that ACSO "prepared the subpoenaed documents as agents of the government and members of the prosecution team," and that Defendants have no other way to discover what ASCO thinks about the structure and membership of Sem City, an issue that is "at the heart of the [i]ndictment in this case." Opp'n 1-2. Defendants' argument rests on two assumptions: 1) that ACSO is an active member of the prosecution team and that it gathered the information in the subpoenaed records as an agent of the prosecution; and (2) that ACSO has shared unredacted copies of the records in question with the government, and the government may attempt to use the records to establish the existence of Sem City and Defendants' membership therein.

ACSO unequivocally denied both of Defendants' assumptions.

First, ACSO denied that it is part of the prosecution team. It states that it functions as a jailer, and as such, plays two roles in the context of this case. It manages the jails, and it investigates crimes that take place in the jails. ACSO contends that in its role as a jailer, it is a distinct and separate entity from the prosecution. It created the jail classification records at issue to assist it with supervising and managing the jails. *See People v. Superior Court (Barrett)*, 80 Cal. App. 4th 1305, 1317 (2000) (describing "hybrid status" of California Department of Corrections (CDC); noting that in addition to investigating a homicide that took place inside a prison, "CDC first and foremost supervises, manages and controls the state prisons," and concluding that "[i]n connection with . . . housing California felons . . . CDC is not part of the

6

prosecution team."). Lt. Michael T. Molloy, who managed the Classification Unit at the Santa Rita Jail during the relevant time period, states that "classification records are created for all inmates who enter [ACSO] jails," as a matter of policy consistent with state law. Molloy Decl. ¶ 16. The records "were not created as part of any federal investigation." *Id*.

Second, ACSO denies that it has provided unredacted copies of Defendants' classification reports to the prosecution. Molloy states that ACSO provided the FBI with the heavily redacted classification reports in January 2014. Molloy Decl. ¶ 13. The government then issued a subpoena to ACSO seeking unredacted copies of the classification reports. *Id*. at ¶ 14. ACSO refused to produce those records, and the government subsequently rescinded its subpoena. *Id*. Molloy states that "ACSO has neither produced nor provided any un-redacted versions of the classification records in this matter to the federal government." *Id*. Counsel for ACSO represented to the court that absent a court order, ACSO will not provide any classification documents to the prosecution other than what has already been produced, i.e., the heavily redacted jail classification reports. Hr'g Tr. 21.

After ACSO refuted Defendants' underlying assumptions about ACSO's role and actions at the hearing, Defendants shifted their relevance argument somewhat. They now contend that regardless of whether ACSO is a member of the prosecution team, the jail classification records are relevant because ACSO is a governmental entity that regularly determines inmates' gang affiliations as part of its management of the jails. Additionally, Defendants argue that ACSO's jail classification records may contain exculpatory or inculpatory information about the structure and membership of Sem City. For example, despite Defendant Ellis's "no" response to the question about his gang membership, his July 27, 2013 jail classification report states that ACSO classified him as a member of the Case Boy and 5900 Seminary gangs. Importantly, ACSO did not classify him as a member of Sem City. *See* Opp'n Ex. B. According to Defendants, ACSO's determination of Ellis's gang affiliation conflicts with and undermines the government's allegations in the indictment.

In response, ACSO asserts that it classifies inmates' gang affiliation for safety and security purposes, and not "in terms of the elements of a RICO case." Hr'g Tr. 34. Therefore, it argues,

ACSO's assessment regarding Defendants' gang affiliation is irrelevant to disproving the government's allegations.

The court concludes that Defendants have established that the jail classification records satisfy Rule 17(c)'s relevancy requirement. As a governmental entity that regularly assesses inmate gang affiliation and membership as part of managing the jails, ACSO's assessments of Defendants' gang affiliations are relevant to the government's allegations with respect to the existence of Sem City, and Defendants' participation in Sem City. ACSO's jail classification decisions about Defendants are potentially exculpatory, since Defendants may be able to affirmatively use the information in the jail classification records to refute the government's allegations that they are members of the alleged Sem City racketeering enterprise, including contradicting anticipated government expert testimony on this issue.[2]

As to the remaining two Rule 17(c) requirements, ACSO conceded that the narrowed subpoena satisfies the requirement of admissibility. Hr'g Tr. 33. Once Defendants narrowed the scope of the subpoena to jail classification records, ACSO also did not challenge the subpoena on the basis of specificity. Accordingly, the court finds that Defendants have satisfied the Rule 17(c) requirements. It now turns to ACSO's claim of official information privilege.

**B. Official Information Privilege**

As noted, the court concluded that Campos's declaration satisfied the *Kelly* threshold and ordered ACSO to submit the documents for in camera review. Hr'g Tr. 43. Having reviewed the documents, the court must now balance ACSO's interest in maintaining the confidentiality of the documents with Defendants' interest in obtaining the documents. *See Soto*, 162 F.R.D. at 613.

The court first addresses Defendants' waiver arguments. Defendants argue that ACSO has

---

[2] ACSO argues that impeachment of government experts is insufficient to establish the *Nixon* factors, citing *United States v. Cervantes*, No. 12-cr-00792 YGR (KAW) (N.D. Cal. June 9, 2016) (Docket No. 1266), in which the court quashed a Rule 17(c) subpoena for prison records sought to impeach a cooperating witness. This misapprehends Defendants' argument regarding their potential use of the documents with government experts. Defendants do not seek the records to challenge the credibility or veracity of government experts, which use is generally an insufficient basis for pretrial production under Rule 17(c). *See Nixon*, 418 U.S. at 701; *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981). Instead, they seek the records to attack the basis for anticipated expert testimony that they are members of an alleged RICO enterprise known as Sem City.

waived any privilege in the jail classification reports, since it previously filed an unredacted copy of the first page of the two-page form in the public record. *See Candler v. Santa Rita Cty. Jail's Watch Commander*, No. C 11-01992 CW (N.D. Cal. June 22, 2015) (Docket No. 96-8 at 10 (June 22, 2015 Decl. of Michael Molloy ISO Defs.' Mot. for Summ. J., Ex. D).). They also argue that the first page of the forms contain Defendants' signatures, indicating that the reports were shown to the Defendants in an unredacted form at some point in time. ACSO responds that the form it currently uses is a different version of the form that it filed in the public record in *Candler*. It argues that the current version contains additional questions of a private nature, such as whether the inmate has been sexually assaulted in jail or prison. Hr'g Tr. 31-32.

The court has compared the form that was publicly filed in *Candler* with the first pages of the various versions of Defendants' jail classification report forms. While the current version of the form contains an additional question about sexual assault, the remaining questions are substantially similar, if not identical. The court finds that ACSO has thus waived any privilege in the first page of the classification report forms by filing one in the public record in *Candler*. The court also finds that privacy concerns regarding Defendants' responses to specific questions can be adequately addressed by a protective order, discussed further below.

However, the court finds no waiver of the privilege as to the second page of the various versions of the classification report form. There is no evidence that any version of the second page has ever been publicly filed or shown to Defendants.

Turning to the *Kelly* balancing test, the court in *Kelly* set forth a list of non-exhaustive factors a court may consider in balancing a requesting party's need for information against the government's need for confidentiality. 114 F.R.D. at 663. Since the discussion in *Kelly* focused on applying these factors in the context of civil rights cases against police departments, not all are applicable here. However, relevant *Kelly* balancing factors include the importance of the information sought to the requesting party, whether the information sought is available from other sources, the impact upon persons who have given information of having their identities disclosed, and whether a police investigation has been completed. *See id.*

ACSO submitted Defendants' individual jail classification files for in camera review. The

9

court identified documents within the files, including the classification reports, that bear on the question of Defendants' alleged participation in Sem City. As to the second pages of the classification reports, the redacted portions contain abbreviations, codes, and acronyms related to ACSO's inmate classification procedures. They also contain information specifically relevant to ACSO's assessment of Defendants' gang affiliations. ACSO filed under seal a declaration of Hattaway, the manager of ACSO's Classification Unit, explaining the information on the second pages of the classification reports, and on March 9, 2017, the court also conducted an ex parte evidentiary hearing under seal at which Hattaway testified under oath. Based on the evidence presented, and the fact that much of the information in the redacted portions does not pertain to gang classification, the court concludes that ACSO's interest in maintaining the confidentiality of the information in the redacted portions of the second page of the classification reports, including the form itself, outweighs Defendants' need to obtain the unredacted forms. However, the court also finds that information in the redacted portions that reflects ACSO's assessment of Defendants' gang affiliations can be shared with Defendants in a way that does not compromise the confidentiality of ACSO's form itself, pursuant to the terms of a protective order.

Additionally, the court identified four documents in Defendants Ellis, Pennymon, and McDaniels's individual classification files that contain information relevant to the question of their alleged participation in the Sem City enterprise. This information is unavailable from any source other than ACSO's records since it reflects ACSO's own gang affiliation assessments for those three Defendants. Further, one of the documents in Ellis's file, an incident/criminal report, pertains to an investigation that ACSO has confirmed is now a closed matter. [Docket No. 283 (Hattaway Decl., Mar. 15, 2017) ¶ 3.] The court finds that an appropriately-tailored protective order, along with appropriate limited redactions, will amply protect ACSO's interests in maintaining the confidentiality of the documents.

All of the documents and information described above shall be produced to Defendants pursuant to a protective order, discussed below. Upon entry of the protective order, the court will file under seal an order describing in detail the documents that shall be produced to Defendants in response to the subpoena and any required redactions, along with how ACSO will provide the

information in the redacted portions of the second page of the classification report.

### C. Protective Order

At the hearing, defense counsel agreed that documents produced by ACSO should be subject to a protective order that restricts use of the documents to this case only. Defense counsel further agreed that the protective order should restrict disclosure so that counsel may share an individual defendant's record(s) with that individual defendant only; i.e., Defendant Ellis would only be shown his own classification records, and not the classification records of any of his co-defendants. Hr'g Tr. 40. Defense counsel further agreed that Defendants would not receive copies of their records, but would instead only be shown the records. *Id*. However, counsel requested that they be allowed to share all of the classification records for all four defendants among all defense counsel. *Id*.

The court agrees that these provisions are necessary and appropriate. The parties and ACSO shall meet and confer to draft a protective order in accordance with the provisions above governing the material produced pursuant to the subpoena. The protective order shall also contain a provision that the parties and ACSO shall meet and confer in advance of trial and seek the guidance of the court as to appropriate procedures to govern use of ACSO documents during pretrial and trial proceedings.

## IV. CONCLUSION

For the foregoing reasons, ACSO's motion to quash is granted in part and denied in part. **Within ten days of the date of this order**, ACSO and Defendants shall submit a proposed protective order in accordance with the court's instructions.

**IT IS SO ORDERED.**

Dated: March 29, 2017



Donna M. Ryu
United States Magistrate Judge