UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

PURVIS LAMAR ELLIS,

Defendant/Movant.

Case No.  13-cr-00818-PJH-1

**ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY**

Before the court is the pro se motion, as amended, of defendant Purvis Lamar Ellis for an order under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  The court determines that the matter is suitable for decision without oral argument and deems the matter submitted on the papers.  Having carefully considered the relevant legal authority, the parties' papers, and the record, and having presided over the underlying proceedings, the court DENIES Ellis's § 2255 motion for the reasons set forth below.

BACKGROUND

**I.      Conviction Proceedings**

Defendant Ellis is currently serving a sentence imposed by this court.  On December 19, 2013, Ellis was charged in the following counts of an eight-count indictment: Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); Attempted Murder in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(5) and 2 (Count Two); Assault with a Dangerous Weapon/Resulting in Serious Bodily Injury in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(3) and 2 (Count Three); Maiming in

United States District Court
Northern District of California

1   Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(2) and 2 (Count Four); and

2   Use/Possession/Brandish/Discharge of a Firearm in Furtherance of a Crime of Violence

3   in violation of 18 U.S.C. § 924(c)(1)(A) and 2 (Count Five).

4         Counsel for Ellis and his co-defendants jointly filed several pretrial motions,

5   including motions for a bill of particulars; motion to dismiss, or, in the alternative, for a bill

6   of particulars; motion for discovery and disclosure of FRE 404(b) evidence and disclosure

7   of identity of confidential informant; motion for search and disclosure of electronic

8   surveillance; motion to suppress pretrial and in-court identifications; motion to suppress

9   evidence seized from search on residential curtilage; motion to suppress evidence from

10  an apartment search and for a *Franks* hearing; motion to suppress evidence seized

11  pursuant to arrest; and motion to suppress evidence seized from digital devices.  After

12  ruling on defendants' pretrial motions, the court referred the case to a United States

13  Magistrate Judge for discovery disputes.  Dkt. nos. 127, 143, 147.  Defendants litigated

14  several discovery matters before the Magistrate Judge, including disclosures about the

15  use of cell-site simulators.  *See* dkt. no. 215.  Counsel for Ellis subsequently filed motions

16  on behalf of all defendants to suppress evidence obtained from cell-site simulators and

17  evidence seized during an apartment search, which the court denied by order entered

18  August 24, 2017.  Dkt. no. 337.

19        On September 21, 2017, Ellis entered a guilty plea to Counts One, Two and Five

20  pursuant to a written plea agreement under Rule 11(c)(1)(A) and 11(c)(1)(C) of the

21  Federal Rules of Criminal Procedure.  The plea agreement included an appeal waiver

22  and reflected Ellis's agreement that the elements of Count Five, Discharge of a Firearm

23  During and in Relation to a Crime of Violence, were the following:

24              (1) I committed the crime of Attempted Murder in Aid of
                Racketeering, which is a crime of violence;
25              (2) I knowingly aided and abetted the discharge of a firearm,
                that is, I aided and abetted another to actively employ a firearm,
26              during and in relation to that crime.

27  Dkt. no. 352.  On February 28, 2018, the court sentenced Ellis to a total term of 240

28

1    months of imprisonment, consisting of 120 months on Count One and Two, to be served

2    concurrently, and 120 months on Count Five to be served consecutively to all other

3    counts; 5 years of supervised release; and a $300 special assessment.  Counts Three

4    and Four were dismissed on the government's motion.  The judgment was entered on the

5    court docket on March 5, 2018.  Dkt. no. 377.

6    **II.      Section 2255 Motion**

7          On August 19, 2019, Ellis filed a pro se motion under 28 U.S.C. § 2255 to vacate,

8    set aside or correct the sentence, asserting a claim of ineffective assistance of counsel

9    for failing to file a notice of appeal at petitioner's request.  Dkt. no. 411.  Because Ellis

10   was convicted of Count Five for use/possession/brandish/discharge of a firearm in

11   furtherance of a crime of violence under 18 U.S.C. § 924(c)(1)(A), the court notified the

12   Office of the Federal Public Defender ("FPD") of his pro se § 2255 motion pursuant to

13   Miscellaneous Order 2019.08.05, in which the court presumptively appointed the FPD to

14   represent any defendant previously determined to have been entitled to appointment of

15   counsel to determine whether that defendant may qualify for relief under § 2255 in light of

16   the Supreme Court's holding in *United States v. Davis*, 139 S. Ct. 2319 (2019), that the

17   residual clause defining a "crime of violence" in 18 U.S.C. § 924(c)(3)(B) is

18   unconstitutionally vague.  On September 9, 2019, the FPD filed a notice of non-

19   intervention stating that it would not seek appointment to represent Ellis on any *Davis*

20   claim, without taking a position on the merits of any potential *Davis* claim.  Dkt. no. 414.

21         By order entered October 9, 2019, the court dismissed the § 2255 motion with

22   leave to amend.  Dkt. no. 416.  Ellis timely filed an amended § 2255 motion on October

23   28, 2019, asserting an ineffective assistance of counsel claim on the ground that he

24   asked his attorney to file an appeal, and that she failed to do so.  Dkt. no. 418 ("Mot.").

25   Ellis's amended § 2255 motion included an express waiver of attorney-client privilege

26   with respect to defense counsel's alleged failure to file a notice of appeal.  On November

27   18, 2019, the court issued an order to show cause and authorized the government to

28   conduct discovery of attorney-client communications subject to Ellis's narrow waiver of

United States District Court
Northern District of California

the attorney-client privilege, only as necessary to respond to the § 2255 motion as limited to the matters raised by his ineffective assistance of counsel claim, pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings.  Dkt. no. 419.

The government filed a response in opposition to the amended § 2255 motion on January 21, 2020.  Dkt. no. 425 ("Opp.").  In support of its response, the government submitted a copy of defense counsel's sworn responses to the government's written interrogatories, including the following:

> **INTERROGATORY NO. 3:**
> At any time after his guilty plea, did Purvis Lamar Ellis indicate to you, in any way, that he wanted to file a notice of appeal?
>
> **RESPONSE TO INTERROGATORY NO. 3:**
> No, not that I recall.
>
> **INTERROGATORY NO. 4:**
> What would your standard practice be in a situation where a defendant told you that he or she wanted to file a notice of appeal after pleading guilty?
>
> **RESPONSE TO INTERROGATORY NO. 4:**
> If a client indicated he or she wanted to file a notice of appeal, I would consult with the client about pertinent considerations, such as whether any plea agreement included a waiver of appeal or whether there were any meritorious appellate issues.  If, after discussion, the client wanted to file a notice of appeal, I would file a notice of appeal.

Dkt. no. 425-2 (Joiner Decl., Ex. A).

On January 30, 2020, Ellis filed a reply to the government's opposition, asserting that "he had in fact requested counsel to file a notice of appeal after the sentencing."  Dkt. 426 ("Reply") ¶ 5.  Ellis asserted that a request for electronic discovery into his archived CORRLINKS inmate email account from the Bureau of Prisons ("BOP") would show that he "had repeatedly communicated via email to counsel about the status of any appeal," and requested an evidentiary hearing as to his communications with defense counsel about filing an appeal.

United States District Court
Northern District of California

By order entered March 2, 2020, the court construed Ellis's assertions as a request for discovery and authorized limited discovery of his available email records from the Bureau of Prisons ("BOP") reflecting email communications via CORRLINKS to his attorney from February 28, 2018, to March 19, 2018.  Dkt. no. 427.  The government filed a series of three status reports, including a sworn declaration by a BOP paralegal specialist stating that Ellis was in the process of being transferred to BOP custody during the relevant timeframe and did not enter BOP custody until March 21, 2020, so that Ellis would not have had access to BOP's CORRLINKS email service during the relevant time period.  Dkt. no. 430 (first status report and Vickers Decl. filed 4/6/2020).  As Ellis was incarcerated at the Glen Dyer Facility until March 12, 2018, and in the Nevada Southern Detention Center ("NSDF") from March 12 to March 20, 2018, the government conducted additional discovery from those non-BOP facilities.  The government reported that the Glen Dyer county jail does not provide email access for federal inmates, making it impossible for Ellis to communicate with his attorney by email from the period February 28 to March 12, 2018.  Dkt. no. 433 (second status report and Decl. of F.B.I. S.A. Alvarez filed 6/5/2020).  The government further reported that NDSF confirmed that any emails sent or received by inmates while in custody at NDSF are retained for five years, and that a facility investigator with NDSF conducted a search and did not locate any emails sent to or from Ellis during his eight-day incarceration there.  Dkt. no. 435 (third status report and McCoy Decl. filed 6/16/2020).

On June 25, 2020, Ellis filed a supplemental motion to renew his request for an evidentiary hearing on his claim that counsel was ineffective for failing to file a notice of appeal.  Dkt. no. 437.  Ellis asserts that after the sentencing, he asked counsel to file an appeal because he was uncomfortable with the conviction on Count Five for discharge of a firearm in furtherance of a crime of violence.  Ellis further asserts that during a conference call with defense counsel on August 6, 2019, he asked counsel about the status of his appeal and whether the recent *Davis* decision could apply to his case, and that counsel responded that she possibly "forgot" to file the appeal.

**LEGAL STANDARD**

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside, or correct a sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A prisoner filing a claim for federal habeas relief under 28 U.S.C. § 2255 is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003).

The Sixth Amendment right to counsel guarantees effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A successful claim of ineffective assistance has two components. First, a defendant must show that counsel's performance was deficient. *Id.* at 687. Deficient performance is representation that falls below an objective standard of reasonableness. *Id.* at 688. Second, having established deficient performance, the defendant must show he was prejudiced by counsel's errors; that is, there must be a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

In order to demonstrate deficient performance, a habeas petitioner is required to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687. The relevant query is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

**DISCUSSION**

**I.     Ineffective Assistance of Counsel Claim**

    **A.     Evidentiary Hearing Not Warranted**

Ellis claims that defense counsel failed to file a notice of appeal as he requested. Ellis claims that he is entitled to relief on his ineffective assistance claim without a showing of prejudice under *Roe v. Flores-Ortega,* 528 U.S. 470, 484 (2000) and *Garza v. Idaho*, 139 S. Ct. 738, 750 (2019), holding that where "an attorney performed deficiently in failing to file a notice of appeal despite the defendant's express instructions, prejudice is presumed 'with no further showing from the defendant of the merits of his underlying claims.'" Ellis further argues that if counsel had filed a notice of appeal, he would have challenged the constitutionality of his 18 U.S.C. § 924(c) conviction, and that counsel's deficient performance caused actual prejudice because his § 924(c) conviction would have been vacated in light of *Davis.*

As a threshold matter, the court must determine whether an evidentiary hearing is necessary on the factual issue whether Ellis expressly instructed defense counsel to file a notice of appeal, which he states he did after his sentencing. If Ellis expressly instructed his attorney to file a notice of appeal, and counsel disregarded his specific request, counsel's failure to file the requested appeal is professionally unreasonable and amounts to deficient performance under the first *Strickland* prong. *Flores-Ortega*, 528 U.S. at 477. *See Rodriquez v. United States*, 395 U.S. 327, 328 (1969) (where the defendant alleged in § 2255 motion that he told his counsel to perfect an appeal but counsel failed to do so, and the trial court failed to advise the defendant of his right to appeal at the time of sentencing, the defendant was entitled to a new appeal without further showing). If, however, the defendant has not clearly expressed his wishes to his attorney about filing an appeal, the court must determine whether counsel performed deficiently by considering whether counsel consulted with the defendant about filing an appeal, and if not, whether counsel's failure to consult was professionally unreasonable. *Flores-Ortega*, 528 U.S. at 478–80.

United States District Court
Northern District of California

1   Here, Ellis asserts that he expressly asked defense counsel to file a notice of

2   appeal after his sentencing.  Defense counsel, however, provided sworn responses to the

3   government's interrogatories stating that she did not recall that Ellis indicated at any time

4   after his guilty plea that he wanted to file a notice of appeal.  Joiner Decl., Ex. A at 2.

5   Defense counsel also responded that if a defendant told her that he wanted to file a

6   notice of appeal after pleading guilty, her standard practice would be to file a notice of

7   appeal if the client wanted to do so after she discussed the pertinent considerations with

8   the client, such as whether any plea agreement included a waiver of appeal or whether

9   there were any meritorious appellate issues.  *Id.*

10   Addressing defense counsel's inability to recall whether he had asked her to file a

11   notice of appeal after the sentencing, Ellis contends that "he had in fact requested

12   counsel to file a notice of appeal after the sentencing" and that his archived CORRLINKS

13   inmate email account with BOP would verify that he "had repeatedly communicated via

14   email to counsel about the status of any appeal."  Reply ¶¶ 5, 9–11.  Defense counsel

15   recalled that she received email and/or text communications from Ellis via CORRLINKS

16   sometime after his guilty plea and sentencing, but stated that those communications were

17   no longer available to her.  Joiner Decl., Ex. A at 3.

18   To develop an evidentiary record on the issue whether Ellis expressly asked

19   defense counsel to file a notice of appeal after his sentencing, the court ordered the

20   government to conduct limited discovery into Ellis's CORRLINKS email archives for the

21   period from February 28, 2018, which was the date of Ellis's sentencing, and March 19,

22   2018, 14 days from the entry of judgment, which was the last day to file a timely notice of

23   appeal pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure.  The

24   government provided declarations establishing the following: (1) that Ellis was taken into

25   BOP custody on March 21, 2018, after the time to file a notice of appeal had expired, and

26   that Ellis would not have had access to the CORRLINKS email system between February

27   28 and March 19, 2018; (2) that between February 28 and March 12, 2018, Ellis was

28   housed at the Glen Dyer county jail which did not provide email access for federal

United States District Court
Northern District of California

1    inmates; and (3) that between March 12 and March 20, 2018, Ellis was housed in the

2    Nevada Southern Detention Facility, a non-BOP facility, which has an email retention

3    policy of retaining inmate emails for at least five years and did not locate any emails sent

4    or received by Ellis during his time there.  Dkt. nos. 430, 433, 435.  If Ellis specifically

5    recalls using CORRLINKS to email defense counsel about filing a notice of an appeal, he

6    would have been in BOP custody, which would have been after the time to appeal had

7    expired.  In light of this evidence, the court concludes that Ellis did not communicate with

8    defense counsel by email after his sentencing to ask her to file a notice of appeal within

9    the time to do so.  Ellis's statements that he used his CORRLINKS account to

10   communicate with counsel about the filing of an appeal would be consistent with email

11   communications while he was in BOP custody, starting March 21, 2018, only after the

12   time to file a notice of appeal had passed.

13          In a supplemental reply brief, styled as a motion to renew motion for evidentiary

14   hearing, Ellis replies that he never alleged that he had communication with counsel

15   during the time period February 28 to March 21, 2018, only that he had requested

16   counsel to file a notice of appeal to challenge § 924(c) conviction for discharge of a

17   firearm.  Dkt. no. 437.  Ellis states that he told counsel before agreeing to the terms of the

18   plea agreement that he never possessed or used a firearm and that he also told counsel

19   that he did not discharge a firearm; he further states that counsel advised that under

20   federal law, he could still be held responsible for the firearm and advised that he would

21   have to agree to plead guilty to discharge of the firearm in order for the government to

22   accept the plea agreement.  *Id.*  Ellis also asserts that after the sentencing he asked

23   counsel to file an appeal because he was "uncomfortable with the firearms situation."  *Id.*

24   Ellis asserts the need for an evidentiary hearing without providing factual allegations to

25   support a claim that he expressly asked his attorney to file a notice of appeal within the

26   time to do so.

27          "In deciding whether to grant an evidentiary hearing, a federal court must consider

28   whether such a hearing could enable an applicant to prove the petition's factual

9

allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). While Ellis's factual assertions suggest that he communicated with defense counsel about filing an appeal while he was in BOP custody, sometime after the deadline to file a notice of appeal had passed, they do not support an inference that he asked his attorney to appeal within the time permitted under the applicable rules of appellate procedure. Under *Flores-Ortega*, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have **timely** appealed." *Flores-Ortega*, 528 U.S. at 484 (emphasis added). The court takes into consideration its familiarity with defense counsel's many years of experience in federal criminal practice, as a criminal defense lawyers and previously as a federal prosecutor, as well as counsel's vigorous representation of Ellis in seeking discovery and filing pretrial motions, to conclude that if Ellis had timely asked her to file an appeal, she would have done so, as she stated was her standard practice. Even Ellis's contention that during a telephone call on August 6, 2019, defense counsel stated that she possibly "forgot" to file the appeal, dkt. no. 437, does not demonstrate that Ellis expressly asked her to file an appeal in a timely manner, such that he would have timely appealed but for counsel's alleged deficient performance. *Flores-Ortega*, 528 U.S. at 484. On this record, the motion and the files and records of the case conclusively show that Ellis did not expressly ask defense counsel to file a notice of appeal within the time to do so, and an evidentiary hearing is not warranted.

      **B.**   ***Strickland* Analysis**

          **1.**    **Deficient Performance Prong**

      Applying the two-prong test for ineffective assistance claims under *Strickland*, the court first considers whether defense counsel's performance was deficient in failing to file a notice of appeal. *Flores-Ortega*, 528 U.S. at 476–80. As the court has determined that Ellis did not expressly instruct defense counsel to file an appeal within the time to do, "the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact

consulted with the defendant about an appeal." *Flores-Ortega*, 528 U.S. at 478.  The

record of the change of plea and sentencing proceedings before the court, as well as

Ellis's representations and the discovery conducted by the government, establish that

defense counsel advised Ellis, during oral communications at the jail, about his appellate

rights in connection with his decision to plead guilty; that Ellis acknowledged during the

plea colloquy that he understood that he waived his right to appeal his sentence by

pleading guilty and that counsel consulted with him about the plea agreement; and that

defense counsel stated on the record that she discussed the plea agreement with Ellis

and that he understood it in its entirety, "including the provisions that waive his appellate

rights."  Joiner Decl., Exs. A and B at 21–25 (change of plea transcript).  On this record,

Ellis fails to demonstrate that defense counsel failed to consult with Ellis about his appeal

rights and performed below an objective standard of reasonableness.

### 2.   Prejudice Prong

#### a.   Prejudice Standard Under *Flores-Ortega* and *Garza*

With respect to the second *Strickland* prong requiring prejudice, when an

attorney's deficient performance deprives a defendant of an appeal that he would have

otherwise pursued*,* the actual merits of an appeal are irrelevant to the ineffective

assistance inquiry, and prejudice is presumed, if the defendant demonstrates that but for

counsel's deficient performance, he would have appealed.  *Flores-Ortega*, 528 U.S. at

484.  This presumption of prejudice under *Flores-Ortega* is not limited to the situation

where "counsel failed to follow the client's explicit request to file a notice of appeal," as

the government suggests.  Opp. at 2–3.  Even when the defendant "has not clearly

conveyed his wishes one way or the other" about filing an appeal, if "counsel's

constitutionally deficient performance deprives a defendant of an appeal that he

otherwise would have taken," the prejudice inquiry is satisfied if the defendant

demonstrates "that there is a reasonable probability that, but for counsel's deficient failure

to consult with him about an appeal, he would have timely appealed."  *Flores-Ortega*, 528

U.S. at 477, 484.  The Supreme Court reasoned that when a defendant is deprived of an

United States District Court
Northern District of California

1    appeal that he otherwise would have taken due to counsel's alleged deficient

2    performance in failing to file a notice of appeal, counsel's deficient performance caused

3    the forfeiture of the appellate proceeding altogether.  *Flores-Ortega*, 528 U.S. at 483.

4    The Court held that under those circumstances, the "denial of the entire judicial

5    proceeding itself, which a defendant wanted at the time and to which he had a right,"

6    demands a presumption of prejudice.  *Id.*

7        In *Garza,* the Supreme Court extended *Flores-Ortega* to apply in the context of

8    appeal waivers in plea agreements.  Applying the first *Strickland* prong*,* the Court held

9    that where the defendant told his trial counsel that he wished to appeal, as counsel

10   acknowledged, the attorney rendered deficient performance by not filing the notice of

11   appeal in light of the defendant's clear requests.  *Garza,* 139 S. Ct. at 746 (citing *Flores-*

12   *Ortega,* 528 U.S. at 477).  Rejecting the argument that counsel made a strategic decision

13   not to file a notice of appeal in light of the appeal waiver, the Court reasoned that "simply

14   filing a notice of appeal does not necessarily breach a plea agreement, given the

15   possibility that the defendant will end up raising claims beyond the waiver's scope."  *Id.*

16   The Court reasoned that "it is the defendant's prerogative whether to appeal" and that

17   filing a notice of appeal is a purely ministerial, "nonsubstantive act" that imposes no great

18   burden on the attorney.  *Id.* at 746, 748.

19       Turning to the prejudice inquiry under the second *Strickland* prong, *Garza* cited the

20   holding of *Flores-Ortega* that "[s]o long as a defendant can show that 'counsel's

21   constitutionally deficient performance deprive[d him] of an appeal that he otherwise would

22   have taken,' courts are to 'presum[e] prejudice with no further showing from the

23   defendant of the merits of his underlying claims.'"  *Garza*, 139 S. Ct. at 747 (citing *Flores-*

24   *Ortega*, 528 U.S. at 484).  The Court held that *Flores-Ortega*'s presumption of prejudice

25   applies despite an appeal waiver without a further showing of his claims' merits, where

26   there was no dispute that Garza wished to appeal.  *Id.*  The Court emphasized that an

27   appeal waiver does not hinder the presumption of prejudice under *Flores-Ortega*:

28                    That  Garza  surrendered  many  claims  by  signing  his

                                          12

appeal waivers does not change things.  First, this Court has made clear that when deficient counsel causes the loss of an entire proceeding, it will not bend the presumption-of-prejudice rule simply because a particular defendant seems to have had poor prospects.  *See, e.g., Jae Lee v. United States*, 582 U.S. – ––––, ––––, 137 S. Ct. 1958, 1966–67, 198 L.Ed.2d 476 (2017). We hew to that principle again here.

Second, while the defendant in *Flores-Ortega* did not sign an appeal waiver, he did plead guilty, and—as the Court pointed out—"a guilty plea reduces the scope of potentially appealable issues" on its own.  *See* 528 U.S. at 480, 120 S. Ct. 1029.  In other words, with regard to the defendant's appellate prospects, *Flores-Ortega* presented at most a difference of degree, not kind, and prescribed a presumption of prejudice regardless of how many appellate claims were foreclosed.  *See id.*, at 484, 120 S. Ct. 1029.  We do no different today.

*Garza*, 139 S. Ct. at 747.  The Court also clarified the appropriate remedy for ineffective assistance of counsel in failure to file an appeal: "When counsel's deficient performance forfeits an appeal that a defendant otherwise would have taken, the defendant gets a new opportunity to appeal."  *Id.* at 749.  Recognizing that there is no right to counsel in postconviction proceedings, the Court emphasized the benefits of restoring not only the right to file an appeal but also the right to appellate counsel:

That rule does no more than restore the status quo that existed before counsel's deficient performance forfeited the appeal, and it allows an appellate court to consider the appeal as that court otherwise would have done—on direct review, and assisted by counsel's briefing.

*Garza*, 139 S. Ct. at 749.

### b.     No Reasonable Probability of Timely Appeal

Here, even if defense counsel had performed in a professionally unreasonable manner under the circumstances by failing to further consult with Ellis about filing an appeal, Ellis has not demonstrated that her alleged deficient performance caused prejudice.  To satisfy the prejudice requirement, Ellis "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Flores-Ortega*, 528 U.S. at 484.  The Court in

*Flores-Ortega* expressly held that "a defendant's inability to 'specify the points he would raise were his right to appeal reinstated' will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed." 528 U.S. at 486 (quoting *Rodriguez,* 395 U.S. at 330). Accordingly, the prejudice inquiry does not require Ellis to "demonstrate that his hypothetical appeal might have had merit," but "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485–86. This standard for determining prejudice from counsel's alleged deficient performance in failing to file a notice of appeal is similar to the *Strickland* prejudice inquiry in the context of a guilty plea when counsel gives deficient advice regarding a potentially valid affirmative defense, which "depends largely on whether that affirmative defense might have succeeded, leading a rational defendant to insist on going to trial." *Id.* at 486 (citing *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).

To make the prejudice determination whether Ellis would have timely filed an appeal but for counsel's alleged deficient performance, the court first considers that the evidence in the record tends to show that Ellis communicated with defense counsel after his sentencing about filing an appeal sometime after he entered BOP custody, which was after the time to file a notice of appeal had expired. *See* Discussion at I.A, *supra.* This finding is sufficient to determine that Ellis has not demonstrated a reasonable probability that, but for counsel's deficient performance, he would have timely appealed.

### c.    Consideration of Nonfrivolous Grounds for Appeal

As an alternate ground for determining whether defense counsel's alleged deficient performance in failing to appeal caused prejudice, the court considers whether there were nonfrivolous grounds for appeal from the § 924(c) conviction to demonstrate a reasonable probability that, but for counsel's alleged failure to consult with Ellis about an appeal, he would have timely appealed. *Flores-Ortega*, 528 U.S. at 485–86. Ellis raises two challenges to his § 924(c) conviction for discharge of a firearm during and in relation

1  to a crime of violence: that he did not actually discharge a firearm and that the predicate

2  offense did not qualify as a crime of violence under the applicable statutory definition,

3  § 924(c)(3)(A).

4      First, Ellis states that he told defense counsel that he never possessed, used or

5  discharged a firearm and was uncomfortable with the firearms conviction.  Dkt. no. 437.

6  The government responds that defense counsel clarified at the change of plea hearing

7  that Ellis himself never discharged the firearm but was pleading guilty to discharge of

8  firearm on an aiding and abetting theory.  Dkt. no. 425 at 6 n.2 and Joiner Decl., Ex. B

9  (9/21/2017 transcript) at 16.  Under Ninth Circuit authority, "there is no material distinction

10 between an aider and abettor and principals in any jurisdiction of the United States

11 including California and federal courts."  *Ortiz-Magana v. Mukasey*, 542 F.3d 653, 659

12 (9th Cir. 2008) (holding that aiding and abetting an assault with a deadly weapon under

13 Cal. Penal Code § 245(a)(1) is the functional equivalent of personally committing that

14 offense).  *See United States v. Milsten,* 814 Fed. Appx. 244, 247 (9th Cir. 2020)

15 (affirming § 924(c)(1)(A) conviction under the theory of aiding and abetting).  This

16 challenge to the § 924(c) conviction would have been a frivolous ground for appeal, and

17 fails to show a reasonable probability that Ellis would have appealed but for counsel's

18 alleged deficient performance.

19     Second, Ellis argues that if he had been allowed to pursue an appeal, he would

20 have challenged the constitutionality of his 18 U.S.C. § 924(c) conviction, which he

21 contends would have been vacated in light of the holding of *Davis,* decided more than a

22 year after Ellis was convicted and sentenced, where the Supreme Court invalidated the

23 residual clause definition of a crime of violence under 18 U.S.C. § 924(c)(3)(B).  139 S.

24 Ct. at 2336.  Section 924(c)(3) defines a crime of violence as an offense that is a felony

25 that

26          (A) has as an element the use, attempted use, or threatened use of
            physical force against the person or property of another, or
27          (B) that by its nature, involves a substantial risk that physical force
            against the person or property of another may be used in the course
28          of committing the offense.

United States District Court
Northern District of California

1   The two subparts of the definition of a crime of violence under § 924(c)(3) are referred to

2   as the "elements clause," § 924(c)(3)(A), and the "residual clause," § 924(c)(3)(B).  *Davis*,

3   139 S. Ct. at 2324.  In *Davis*, the Supreme Court held that the residual clause of 18

4   U.S.C. § 924(c)(3)(B) is unconstitutionally vague, leaving the elements clause intact.  *Id.*

5   at 2325–27, 2336 (citing *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) and *Johnson v.*

6   *United States*, 576 U.S. 591 (2015)).  Ellis suggests that his § 924(c)(1)(A) conviction

7   would have been reversed if he had filed an appeal because a RICO conspiracy is not a

8   crime of violence as defined under the remaining elements clause of § 924(c)(3)(A).

9       Ellis proceeds under the mistaken presumption that his § 924(c) conviction "relates

10  back to his conspiracy Racketeering Conviction in Count One of the Indictment."  Mot. at

11  2.  As the plea agreement reflects, the predicate offense underlying his § 924(c)

12  conviction, for discharge of a firearm in furtherance of a crime of violence, was not the

13  racketeering conspiracy for which he was charged and convicted on Count One, but

14  attempted murder in aid of racketeering as charged and convicted on Count Two.  Dkt.

15  no. 352.  On Count Two, Ellis admitted the following elements, among others: that on or

16  about January 20, 2013, the crime of attempted murder was committed by a member of

17  the enterprise and that Ellis aided, counseled, commanded, induced or procured that

18  person with respect to at least one element of the attempted murder.  *Id.*  The crime of

19  attempted murder in Count Two was defined under California law in the indictment, which

20  charged that Ellis and his co-defendants "together with others known and unknown, each

21  aided and abetted by the other, unlawfully, knowingly and intentionally did attempt to

22  murder Victim-1, in violation of California Penal Code Sections 187, 188, 189, 21a, and

23  664."  Dkt. no. 1.

24      With respect to Ellis's overall contention that his § 924(c) conviction was not based

25  on a valid crime of violence as defined under the elements clause, the government

26  contends that attempted murder under California law qualifies as a crime of violence,

27  arguing that "[t]he Ninth Circuit and federal courts throughout the country have repeatedly

28  held that murder and attempted murder are categorically crimes of violence."  Opp. at 6

United States District Court
Northern District of California

(citations omitted).[1]  Although the government cites no controlling authority on the precise question whether attempted murder under California law is categorically a crime of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A), the Ninth Circuit has found that attempted first degree murder under Washington state law is a categorical crime of violence as defined in 18 U.S.C. § 16(a), which contains an elements clause that is materially identical to § 924(c)(3)(A).  *United States v. Studhorse,* 883 F.3d 1198, 1205–06 (9th Cir.), *cert. denied,* 139 S. Ct. 127 (2018).  *See United States v. Benally*, 843 F.3d 350, 354 (9th Cir. 2016) (applying interpretation of crime of violence definition in 18 U.S.C. § 16 to § 924(c)(3) "because the wording of the two statutes is virtually identical").

In *Studhorse,* the Ninth Circuit applied the categorical approach to compare the elements of the offense of attempted first degree murder crime under Washington law with the generic federal definition of a crime of violence under 18 U.S.C. § 16(a), which has two requirements for a categorical match: (1) "First, the 'physical force' used must be 'violent force,' or 'force capable of causing physical pain or injury to another person[;]'"

---

[1]     The government failed to cite recent Ninth Circuit authority holding that second-degree murder under 18 U.S.C. § 1111 is not a "crime of violence" because it can be committed recklessly, reversing a conviction under 18 U.S.C. § 924(c)(1)(A) for discharging a firearm during a "crime of violence."  *United States v. Begay (Randly)*, 934 F.3d 1033, 1038 (9th Cir.), *reh'g held in abeyance,* No. 14-10080, 2019 WL 7900329 (9th Cir. Dec. 5, 2019).  The *Begay* panel decision did not address the question whether attempted murder qualifies as a crime of violence, which the dissenting opinion pointed out: "under the Majority's approach, attempted murder would be a crime of violence while the complete offense would not be."  *Begay*, 934 F.3d at 1048 (N.R. Smith, J., dissenting) (citations omitted).  The proceedings before the Ninth Circuit in *Begay* have been held in abeyance pending issuance of a decision by the court sitting en banc in *United States v. Orona*, No. 17-17508 (9th Cir.), *petition for reh'g en banc granted* Nov. 18, 2019, *stay issued* Nov. 19, 2019, *en banc oral argument ordered* Feb. 7, 2020, *stay issued and oral argument vacated* Apr. 1, 2020.  The Ninth Circuit has since stayed the en banc proceedings in *Orona* pending issuance of a decision by the Supreme Court in *United States v. Borden*, No. 19-5410, *cert. granted* Mar. 2, 2020 (whether a criminal offense that can be committed with a mens rea of recklessness can qualify as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. 924(e)).

(2) "Second, the use of force must be intentional, not just reckless or negligent."

*Studhorse*, 883 F.3d at 1203 (quoting *United States v. Dixon*, 805 F.3d 1193, 1197 (9th

Cir. 2015)) (internal citations and marks omitted).  The court in *Studhorse* concluded that

Washington attempted first degree murder fell within § 16(a)'s definition of a "crime of

violence," upon finding that the elements of criminal attempt under Washington law,

namely, "intent to commit the base crime and a substantial step toward doing so," (1) had

the required element of the use, attempted use, or threatened use of physical force, and

(2) satisfied the mens rea requirement of specific intent.  883 F.3d at 1203–04.

Turning to the crime of violence at issue here, under California law, "[a]ttempted

murder requires the specific intent to kill and the commission of a direct but ineffectual act

toward accomplishing the intended killing."  *People v. Stone*, 46 Cal. 4th 131, 136 (2009)

(citing *People v. Superior Court* (*Decker*), 41 Cal.4th 1, 7 (2007)).  Applying the reasoning

of *Studhorse* to the crime of violence underlying Ellis's § 924(c) conviction*,* the offense of

attempted murder under California law satisfies both the requirements of specific intent

and the use, attempted use, or threatened use of physical force to qualify as a crime of

violence under the elements clause of § 924(c)(3)(A).  *See United States v. Saavedra-*

*Velazquez,* 578 F.3d 1103, 1109–10 (9th Cir. 2009) (holding that an "attempt" under

California law is coextensive with an "attempt" at common law for purposes of

determining a crime of violence under U.S.S.G. § 2L1.2, noting that California law may be

even more stringent than the "substantial step" requirement for attempt under common

law which "permits, in certain circumstances, preparatory acts to constitute an attempt,

while California requires a direct act (albeit slight)").

Furthermore, in *United States v. Albino-Loe*, 747 F.3d 1206, 1212 (9th Cir. 2014),

the court of appeals held that a prior conviction in California for attempted murder

qualified as a crime of violence warranting a 16–level sentencing enhancement under

section 2L1.2(b)(1)(A)(ii) of the U.S. Sentencing Guidelines, which applies a definition of

a crime of violence containing an elements clause similar to § 924(c)(3)(A): "any other

offense under federal, state, or local law that has as an element the use, attempted use,

or threatened use of physical force against the person of another." U.S.S.G. 2L1.2 cmt. n.2. *See United States v. Becerril-Lopez*, 541 F.3d 881, 890 (9th Cir. 2008) (noting that U.S.S.G. § 2L1.2 did not contain a residual clause), *abrogated on other grounds by United States v. Bankston,* 901 F.3d 1100, 1104 (9th Cir. 2018). In the immigration context, the Ninth Circuit has recognized that attempted murder under California law qualifies as an aggravated felony, defined in 8 U.S.C. § 1101(a)(43)(F) to include the "crime of violence" definition under 18 U.S.C. § 16. *See Lemus-Galvan v. Mukasey*, 518 F.3d 1081, 1083 (9th Cir. 2008) (attempted second degree murder is an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii)), *overruled on other grounds by Maldonado v. Lynch*, 786 F.3d 1155 (9th Cir. 2015) (en banc). *See also United States v. Rodriguez-Garcia,* 605 Fed. Appx. 659, 660 (9th Cir. 2015) (California conviction for aiding and abetting attempted murder qualifies as an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(A, F, U)); *United States v. Rios-Perez*, 380 Fed. Appx. 662, 663 (9th Cir. 2010) (rejecting arguments that attempted murder under California law is not a crime of violence under the categorical approach of *Taylor v. United States*, 495 U.S. 575 (1990)).

Under the weight of these authorities recognizing attempted murder as a crime of violence, Ellis fails to present nonfrivolous grounds for appeal that would demonstrate a reasonable probability that he would have appealed but for defense counsel's alleged deficient performance.

For the reasons discussed above, Ellis fails to demonstrate either deficient performance or prejudice in support of his ineffective assistance claim. Accordingly, the claim for ineffective assistance of counsel is DENIED.

## II.  *Davis* Claim

Although Ellis did not articulate a separate claim for relief under *Davis* to challenge his § 924(c) conviction on the ground that the residual clause definition of a crime of violence in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague, the court liberally construes his pro se allegations to state a claim that his § 924(c) conviction on Count Five is invalid because attempted murder under California law does not qualify as a crime

United States District Court
Northern District of California

1    of violence as defined under the elements clause of § 924(c)(3)(A).

2        As a threshold matter, the government asserts that Ellis's *Davis* claim is

3    procedurally defaulted because the vagueness argument was never raised before his

4    conviction or on direct appeal.  Opp. at 8 n.4.  The government asserts that Ellis had the

5    tools to construct a vagueness challenge to the crime of violence definition in

6    § 924(c)(3)(B) before *Davis* was decided, where the Supreme Court had already decided

7    *Johnson,* 576 U.S. 591, invalidating a similar residual clause in the definition of a violent

8    felony under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii).  *See*

9    *United States v. Frady,* 456 U.S. 152, 167-168 (1982) (holding that procedural default

10   rules developed in the habeas corpus context apply in § 2255 cases); *United States v.*

11   *Braswell*, 501 F.3d 1147, 1150 n.1 (9th Cir. 2007) (noting that "most claims are

12   procedurally defaulted by both federal and state prisoners in habeas proceedings when

13   not raised on direct appeal, absent a showing of cause and prejudice or actual

14   innocence").

15       Having determined in the context of Ellis's ineffective assistance claim that his

16   *Davis* challenge to the § 924(c) conviction is "clearly not meritorious despite the asserted

17   procedural bar," the court proceeds to the merits of the *Davis* claim and declines to

18   resolve the issue whether Ellis can establish cause and prejudice to overcome procedural

19   default.  *United States v. Yong*, 926 F.3d 582, 590 (9th Cir. 2019) (citing *Franklin v.*

20   *Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002)).

21       To the extent that Ellis asserts a standalone claim under § 2255 that his § 924(c)

22   conviction is invalid under *Davis* because attempted murder under California law does

23   not qualify as a crime of violence as defined under the elements clause of § 924(c)(3)(A),

24   that claim is DENIED on the merits in light of Ninth Circuit authority recognizing

25   attempted murder as a crime of violence and for the reasons stated above in determining

26   that Ellis has not shown nonfrivolous grounds for appeal from the § 924(c) conviction to

27   demonstrate a reasonable probability that, but for counsel's alleged deficient

28   performance, he would have timely appealed.  *See* Discussion at I.B.2.c, *supra*.

**CONCLUSION**

For the reasons set forth above, the motion of defendant Purvis Lamar Ellis to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 is DENIED.  This is a final order disposing of the § 2255 motion on the merits of the claims for sentence relief.

**DENIAL OF CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c)(1), an appeal from a final order in a proceeding under § 2255 may not be taken unless a circuit justice or judge issues a certificate of appealability ("COA").  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Williams v. Calderon*, 83 F.3d 281, 286 (9th Cir. 1996).  Pursuant to Rule 11(a) Governing Section 2255 Proceedings, the court declines to issue a certificate of appealability because reasonable jurists would not find debatable whether the § 2255 motion conclusively shows that defendant is not entitled to relief.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Dated:  October 6, 2020

_/s/ Phyllis J. Hamilton_
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
Northern District of California

21