UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>PURVIS LAMAR ELLIS,<br>　　　　Defendant/Movant. | Case No. 13-cr-00818-PJH-1<br><br>**ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY** |

　　　　Before the court is the motion of defendant Purvis Lamar Ellis for an order under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. Having carefully considered the relevant legal authority, the parties' papers, and the record, and having presided over the underlying proceedings, the court DENIES Ellis's § 2255 motion for the reasons set forth below.

## BACKGROUND

**I.　　Indictment and pretrial motions**

　　　　Defendant Ellis is currently serving a sentence imposed by this court. On December 19, 2013, defendant was charged with the following in an eight-count indictment involving three co-defendants: Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); Attempted Murder in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(5) and 2 (Count Two); Assault with a Dangerous Weapon/Resulting in Serious Bodily Injury in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(3) and 2 (Count Three); Maiming in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(2) and

2 (Count Four); and Use/Possession/Brandish/Discharge of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A) and 2 (Count Five).

Through his counsel, Martha Boersch and Matthew Dirkes, defendant filed numerous pretrial motions along with his co-defendants, including motions for a bill of particulars; a motion to dismiss, or, in the alternative, for a bill of particulars; a motion for discovery and disclosure of FRE 404(b) evidence and disclosure of identity of confidential informant; a motion for search and disclosure of electronic surveillance; a motion to suppress pretrial and in-court identifications; a motion to suppress evidence seized from search on residential curtilage; a motion to suppress evidence from an apartment search and for a Franks hearing; a motion to suppress evidence seized pursuant to arrest; and a motion to suppress evidence seized from digital devices. See Dkt. 127, 143.

Defendant's counsel also litigated several discovery matters before the Magistrate Judge, including disclosures about the use of cell-site simulators. See Dkt. 215. Counsel subsequently filed motions on behalf of all defendants to suppress evidence obtained from cell-site simulators and evidence seized during an apartment search. See Dkt. 337.

Defendant has since testified that he participated in the preparation of his pretrial motions and spoke to his attorneys about the claims they raised and were thinking about raising. See Dkt. 575 at 188-89. Boersch and Dirkes have also testified that defendant was "very involved" in defending his case. See Dkt. 570 at 97, Dkt. 575 at 259 ("Very involved . . . He's smart, he's attentive, and he was – was involved in his defense.").

**II.     Plea agreement and sentencing**

On September 21, 2017, defendant entered a guilty plea to Counts One, Two, and Five pursuant to a written plea agreement under Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(C). See Dkt. 352. Boersch has testified that plea negotiations began in May 2017, while defendant's motions to suppress were still before the court. See Dkt. 570 at 118-19. After the court denied all three motions to suppress in August 2017, Boersch and Dirkes continued to meet with defendant to discuss the plea offer.

Boersch testified that she met with defendant on August 29, September 1, and September 6, as well as September 21, the day that defendant changed his plea. See id. at 120. Dirkes testified that he met with defendant on August 22 and September 15. See Dkt. 575 at 256.

Dirkes testified that, during plea negotiations, defendant was initially interested only in an agreement that would result in a 15 year sentence. See Dkt. 575 at 277-78. Boersch testified that defendant ultimately decided that he "would agree to a plea if it were a flat 20 years rather than a range." Dkt. 570 at 39.

After negotiations, defendant agreed to plead guilty to three counts, as stated above. The government agreed to seek a sentence of 20 years. See Dkt. 352. The plea agreement also included an appeal waiver. Id.

At the change of plea hearing, the government's attorney stated that the plea agreement had been passed back and forth between himself and defense counsel "probably ten times." See Dkt. 423 at 15. Notwithstanding, at the change of plea hearing, the parties made a correction and an amendment to the plea agreement by 1) deleting a special finding that had been erroneously included on page 2, and 2) inserting the section numbers of 18 U.S.C. § 3582(c)(2) for clarity. See Dkt. 352.

In addition, the court pointed out an inconsistency in the way that Count Five was described in the plea agreement. As stated above, Count Five charged defendant with the use/possession/brandish/discharge of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) and with aiding and abetting others in this offense in violation of 18 U.S.C. § 2. The court pointed out that the plea agreement was not consistent as to the use of those terms, using "use/possession" on page 3, and "discharge" on page 4. See Dkt. 423 at 12-13. While the government argued that the charged conduct would be covered by any and all of the statutory terms, it also acknowledged that it would be more consistent to use the same term(s) throughout the plea agreement. See id. at 12-16. After government counsel conferred with defense counsel, and after defense counsel conferred with defendant off the record, the parties

agreed to use the term "discharge" throughout the plea agreement. See id. at 16-17. Handwritten edits were made to the plea agreement, which were initialed by both lawyers and by defendant. See Dkt. 352 at 3. Thus, defendant pled guilty to aiding and abetting the discharge of a firearm in the furtherance of a crime of violence. See Dkt. 423 at 17-18.

Before making the changes, defense counsel emphasized that "as to that count, Mr. Ellis is pleading based on an aiding and abetting theory. He, himself, never discharged any firearm." Dkt. 423 at 16. The court agreed "that's how I would reconcile the factual basis with this charge as well," and the government attorney concurred. Id.

There was no evidence that defendant actually handled the firearm; rather, it was the government's theory that defendant drove the vehicle that delivered one of the men responsible for the shooting to the scene and later retrieved three men from the scene of the shooting. During the plea colloquy, defendant described his conduct, and while he was hesitant to agree that he "knew that two people were going to go kill somebody" with certainty, he did agree that he "had reason to believe that firearms would be used" against another person, and then confirmed that he acted with the intent to facilitate the attempted murder. See Dkt. 423 at 32-37. The court also re-confirmed with defendant that he had sufficient time to discuss the plea agreement with his lawyers, and that he did not need to discuss it any further before entering a plea. Id. at 37.

After the change of plea hearing and before sentencing, defendant met with counsel eight times and spoke with counsel by phone three times. See Dkt. 571-2. Neither defendant, Boersch, nor Dirkes recall defendant expressing any wish to withdraw his plea or to appeal during this time. See Dkt. 575 at 216, 259-60, Dkt. 570 at 132-34.

Defendant's sentencing hearing was held on February 28, 2018. As stated above, the parties' agreement was a C-plea which sought a 20-year sentence, but discretion remained with the court to reject or accept the agreement. Before sentencing, defendant's mother sent a letter to the court expressing concern "about the risks that the court might not agree with the 20-year sentence." See Dkt. 389 at 10. The court

ultimately did adopt the parties' recommendation and impose a 20-year sentence. See Dkt. 377.  Notably, defendant's sentence was lower than that of two of his three co-defendants.  See Dkt. 353 (co-defendant McDaniel sentenced to 33 years), Dkt. 381 (co-defendant Kincaid sentenced to 23 years), Dkt. 379 (co-defendant Pennymon sentenced to 18 years).

Defendant now claims that, during the sentencing hearing, he told Boersch that he wanted to appeal.  See Dkt. 570 at 163 ("I was standing at the podium.  If I could recall right, the judge was talking.  She was – she was telling me – she was mentioning the 240 months.  It was – it was like 120, 120, or something like that, and consecutive 240, and I was just like I want to appeal this.  Like I don't – I don't agree with this.").

Boersch testified that defendant did not ask to file an appeal, nor does she recall any conduct or comments from defendant that would demonstrate he was interested in an appeal.  See Dkt. 570 at 135.  Boersch further testified that she kept written records of the sentencing hearing, and that there were no notations about defendant discussing an appeal.  See Dkt. 575 at 239-41.  Dirkes similarly testified that defendant did not ask for an appeal at sentencing.  See id. at 263.

After sentencing, defendant was held at Glen Dyer Jail in Oakland until March 12, 2018, and was then transferred to USP-Atwater in Nevada.  See Dkt. 570 at 164-65.  Defendant testified that he does not recall placing any phone calls or sending any letters to Boersch or Dirkes before his transfer.  See Dkt. 575 at 222-23.  Also, during the process of his transfer, between March 12 and March 20, defendant was not in the custody of the Bureau of Prisons and thus would not have had access to the Corrlinks email system.  See Dkt. 430, Ex. A.

After his transfer, defendant sent letters to counsel dated April 12, 2018; May 3, 2018; and September 8, 2018, none of which mention an appeal.  See Dkt. 571-10, 571-1, 571-9.  Not until a letter dated August 1, 2019, does defendant mention an appeal.  See Dkt. 571-7 ("As you can recall, after my sentencing, we had talked [suggesting a conversation with counsel] about an appeal because the 924(c) count contained the

1  charge of aiding and abetting and I wanted to challenge that on appeal.").

2    Boersch and Dirkes also visited defendant in May and November 2018. See Dkt.
3  570 at 79. Defendant does not claim that he asked them to file an appeal during those
4  visits, but he did testify that, during the May 2018 visit, he "was asking about the Dimaya
5  [Supreme Court decision], if I'm not mistaken, and if Dimaya applied to a 924(c) issue I
6  had." Dkt. 575 at 229. Defendant then testified that, during the second visit in November
7  2018, he "asked specifically about the two cases, Davis and Dimaya again, whether if it
8  applied to my case." Id. at 230.

9    Notably, as judgment was entered on March 2, 2018, the deadline to file a notice
10 of appeal was March 19, 2018. The Supreme Court issued its decision in Sessions v.
11 Dimaya on April 17, 2018, and its decision in United States v. Davis on June 24, 2019.
12 See Dimaya, 584 U.S. 148 (2018), Davis, 139 S.Ct. 2319 (2019). Both cases addressed
13 the issue of vagueness in the context of the statutory term "crime of violence."

14

15 **III. Section 2255 motion**

16   On August 19, 2019, defendant filed a pro se motion under 28 U.S.C. § 2255 to
17 vacate, set aside or correct the sentence, asserting a claim of ineffective assistance of
18 counsel for failing to file a notice of appeal. See Dkt. 411. In the motion, defendant
19 alleged in three instances that he requested an appeal after – not during – his sentencing
20 hearing. See id. at 15, 17, 18. Defendant further alleged that he "had requested counsel
21 to file an appeal due to the stipulation of the discharging of the firearm, and aiding and
22 abetting the discharge of a firearm." See id. at 15.

23   On October 28, 2019, defendant filed an amended § 2255 motion, alleging that "if
24 counsel would have filed a notice of appeal as requested, he would have raised the
25 constitutionality of his 18 U.S.C. 924(c) conviction . . . in light of the Supreme Court's
26 holding in United States v. Davis, 139 S.Ct. 2319 (2019) (that the residual clause defining
27 "crime of violence" in 18 U.S.C. 924(c)(3)(B) is unconstitutionally vague)." See Dkt. 418
28 at 2. The amended § 2255 motion acknowledged that Davis was not decided until June

2019, and does not specify when he requested his counsel to file a notice of appeal. See id.

After the government filed an opposition, defendant filed a reply alleging that he "had requested counsel to file a notice of appeal after the sentencing," and also stating that he seeks to "pursue an appeal of a sentence based on a constitutionally impermissible factor, not yet decided at the time of his conviction." See Dkt. 426 at 1, 3.

This court denied defendant's § 2255 motion on October 6, 2020, and defendant appealed. See Dkt. 446, 458. Counsel was appointed to represent defendant for his habeas proceedings. See Dkt. 510. The Ninth Circuit vacated this court's order and remanded the case with instructions to conduct an evidentiary hearing on defendant's claim that counsel provided ineffective assistance by failing to file a notice of appeal. See Dkt. 541. The court set the evidentiary hearing for October 19, 2023, and directed the parties to file a statement indicating the specific issues to be decided, the applicable legal standards, and a list of witnesses. See Dkt. 552.

The parties filed a joint statement, but defendant's counsel also filed a separate statement, stating that defendant "believes it appropriate to supplement that presentation with a more detailed discussion of the Flores-Ortega claim discussed in the joint filing." See Dkt. 556 at 7. Of particular relevance is the statement's allegation that "[i]mmediately following his sentencing, while in court, Mr. Ellis asked his trial counsel to file an appeal because he remained 'uncomfortable with the firearms situation[.]'" See id. at 9 (quoting Dkt. 437 at 5).

The court conducted an evidentiary hearing on October 19, 2023, and on November 2, 2023. See Dkt. 560, 566. On the first day, the court heard testimony from Boersch and defendant, and on the second day, the court heard additional testimony from defendant and Boersch, as well as testimony from Dirkes. See id.

As mentioned above, defendant's testimony at the evidentiary hearing was that he asked Boersch, during the sentencing hearing, to file an appeal. See, e.g., Dkt. 570 at 163-164. Boersch and Dirkes testified that defendant did not ask them to appeal, and

that they would have filed a notice of appeal if he had done so. See, e.g., Dkt. 570 at 135, Dkt. 575 at 239, 263.

After the evidentiary hearing, the court directed the parties to each file a summation brief that presented their arguments in light of the testimony from the evidentiary hearing. See Dkt. 579, 583.

**LEGAL STANDARD**

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside, or correct a sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A prisoner filing a claim for federal habeas relief under 28 U.S.C. § 2255 is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003).

The Sixth Amendment right to counsel guarantees effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686 (1984). A successful claim of ineffective assistance has two components. First, a defendant must show that counsel's performance was deficient. Id. at 687. Deficient performance is representation that falls below an objective standard of reasonableness. Id. at 688. Second, having established deficient performance, the defendant must show he was prejudiced by counsel's errors; that is, there must be a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

In order to demonstrate deficient performance, a habeas petitioner is required to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. See Strickland, 466 U.S. at 687. The

relevant query is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable.  See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See Strickland, 466 U.S. at 689.

**DISCUSSION**

An attorney who fails to file a notice of appeal, despite the defendant's clear instructions to do so, has performed deficiently and "prejudice is presumed 'with no further showing from the defendant of the merits of his underlying claims.'"  Garza v. Idaho, 139 S. Ct. 738, 749-50 (2019).

If the court does not find that the attorney disregarded a clear instruction to appeal, the court must then determine whether the attorney consulted with defendant about the possibility of an appeal.  Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000).

If the court finds that the attorney consulted with the defendant, and the defendant did not provide "express instructions" to appeal, then the attorney was not ineffective.  See Flores-Ortega, 528 U.S. at 478.

However, if the court finds that the attorney did not consult with the defendant, the court must determine whether the failure to consult rose to the level of deficient performance.  See Flores-Ortega, 528 U.S. at 478.

A failure to consult constitutes deficient performance only when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  See Flores-Ortega, 528 U.S. at 480.

When counsel's deficient performance forfeits an appeal that a defendant otherwise would have taken, the defendant gets a new opportunity to appeal.  Garza, 139 S. Ct. at 749.

**I.      Whether Defendant issued a clear instruction to appeal**

As set forth above, the court's first step is to determine whether counsel disregarded a clear instruction to file a notice of appeal.

As discussed above, there is inconsistency in defendant's allegations as to when he instructed counsel that he wanted to appeal. Prior to the evidentiary hearing, defendant had consistently alleged that he instructed counsel to file an appeal <u>after</u> his sentencing hearing. Specifically, the government cites a 2019 letter from defendant to counsel ("after my sentencing, we had talked about an appeal"), defendant's pro se § 2255 motion ("After sentencing on February 28, 2019, I had required counsel to file a notice of appeal"), defendant's § 2255 reply ("had in fact request[ed] counsel to file a notice of appeal after sentencing"), a motion to renew the motion for an evidentiary hearing ("After the sentencing, I had requested counsel to file an appeal"), defendant's brief to the Ninth Circuit ("immediately following his sentencing, while in court, Ellis requested that his trial counsel file an appeal."), and a filing in this court just two weeks before the evidentiary hearing ("Immediately following his sentencing, while in court, Mr. Ellis asked his trial counsel to file an appeal because he remained 'uncomfortable with the firearms situation'"). <u>See</u> Dkt. 579 at 19-20.

But at the evidentiary hearing, defendant alleged, for the first time, that it was <u>during</u> the sentencing hearing that he told counsel that he wanted to appeal. Specifically, defendant testified that "I was standing at the podium. If I could recall right, the judge was talking. She was – she was telling me – she was mentioning the 240 months. It was – it was like 120, 120, or something like that, and consecutive 240, and I was just like I want to appeal this. Like I don't – I don't agree with this." Dkt. 570 at 163. Defendant was asked to recall the specific words that he said to counsel, and he answered that he told Boersch "that I want to appeal this. Like, make sure you appeal this. Like, I felt I had issues." <u>Id.</u> Defendant further testified that Boersch "looked at me and she said okay." <u>Id.</u> On cross-examination, defendant could not recall at what point in the hearing (i.e., beginning, middle, or end) he made the appeal request, and could not recall whether it

10

was before or after the court had pronounced the term of imprisonment.  Dkt. 575 at 218.

The summation brief filed by defendant's counsel similarly alleges that "during the pronouncement of sentence, [defendant] asked Ms. Boersch to 'appeal this thing.'"  Dkt. 583 at 13.

Aside from pointing out the obvious inconsistency in defendant's testimony, the government further argues that there is no credible evidence supporting the allegation that defendant asked for an appeal during the sentencing hearing.  In particular, the government notes that the transcript of the sentencing hearing does not indicate that defendant began speaking to his counsel while the court was speaking.  See Dkt. 579 at 12.  The government points out that the same transcript indicated such an instance when defendant made a non-verbal response, suggesting that any verbal communication with counsel would have been noted.  See Dkt. 579 at 12 (citing Dkt. 389 at 14).

The government also cites post-sentencing correspondence from defendant to counsel, which did not mention an appeal until August 2019, nearly eighteen months after sentencing, and well after the deadline for filing a notice of appeal, which was March 19, 2018.  Under Flores-Ortega, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  Flores-Ortega, 528 U.S. at 484 (emphasis added).  The government further points to the testimony of Boersch and Dirkes, neither of whom recall defendant mentioning an appeal until his letter dated August 1, 2019.  See Dkt. 579 at 21-23.

Overall, having considered the testimony and arguments presented by the parties, the court concludes that defendant has not shown that he issued a clear instruction to appeal.  In particular, the court notes that defendant consistently and repeatedly claimed that he instructed counsel to appeal after his sentencing hearing, but testified at the evidentiary hearing that the instruction was issued during the sentencing hearing, while proceedings were ongoing.  As the government noted, there is no indication on the transcript that defendant began to speak to counsel during proceedings, and the very

11

same transcript indicates in one instance where defendant made a non-verbal response. Moreover, it is the practice of this court to acknowledge on the record if a defendant speaks to his or her counsel during a criminal proceeding, to ensure that defendant is not distracted from action the court is taking.

Moreover, defendant has not offered an explanation or even an acknowledgment that his allegation has changed; his brief in summation completely ignores his about-face. Nor has he explained what occurred during the sentencing hearing that caused him to change his mind such that he no longer wanted to stand by his guilty plea for the bargained-for sentence. To the extent that defendant alleges that he was "uncomfortable with the firearms situation," any such discomfort would have arisen from the change of plea hearing – not the sentencing hearing – and it is not clear why any discomfort would not have been mentioned during the numerous meetings with counsel after the change of plea hearing but before sentencing. These missing explanations, along with his complete change of position regarding when he asked for an appeal to be filed, render defendant's current testimony less than credible.

In addition, there is no reason to believe that it was the imposition of defendant's sentence that caused him to want to appeal. The 20-year sentence imposed by the court was the same as the sentence recommended by the parties in their plea agreement, and as mentioned above, defendant's mother had expressed concern that the court would exercise its discretion to reject the plea agreement and impose a higher sentence. Also, as mentioned above, two of defendant's three co-defendants were given longer sentences, which goes to the reasonableness of the plea agreement and of the sentence ultimately imposed on defendant.

Defendant's counsel argues that "the court should not credit attorney Boersch's testimony" due to her inconsistencies. See Dkt. 583 at 26. In particular, defendant's counsel cites Boersch's interrogatory response stating that she did not recall defendant asking for an appeal at any time after his guilty plea, which failed to mention defendant's August 1, 2019 letter asking about the status of his appeal. See id. at 19. Defendant's

counsel also cites Boersch's lack of clarity to defendant about when her representation ended, including scheduling prison visits as legal visits, as well as the placing of money in defendant's prison account.  See id. at 16-17.  The court finds Boersch's explanation for her interrogatory response lacks clarity and persuasiveness.  As for visiting defendant after sentencing and placing money in his account, no evidence was presented as to how unusual this was or whether it was unlawful.  Defense counsel's argument that it reflected bias on her part or served as an attempt to bribe defendant in some way is just not persuasive.  Ultimately, the court concludes that these acts on Boersch's part do not go to the ultimate issue before the court on this motion – namely, whether defendant timely instructed his counsel to appeal.  In contrast, the inconsistencies in defendant's testimony go to the central issue of whether defendant did indeed instruct counsel to file a notice of appeal.

In addition to the inconsistencies with respect to the timing of defendant's alleged instruction to appeal, the court has also found inconsistencies with respect to the grounds for any requested appeal.  As set forth above, defendant's initial § 2255 motion alleged that he "requested counsel to file an appeal due to the stipulation of the discharging of the firearm, and aiding and abetting the discharge of a firearm," but in his amended motion two months later, defendant claimed that his requested appeal "would have raised the constitutionality of his 18 U.S.C. 924(c) conviction . . . in light of the Supreme Court's holding in United States v. Davis, 139 S.Ct. 2319 (2019) (that the residual clause defining "crime of violence" in 18 U.S.C. 924(c)(3)(B) is unconstitutionally vague)."  See Dkt. 411 at 15, Dkt. 418 at 2.  Then, in his reply, defendant argued that he wanted to "pursue an appeal of a sentence based on a constitutionally impermissible factor, not yet decided at the time of his conviction."  Dkt. 426 at 3 (emphasis added).  If defendant's requested appeal had arisen out of his discomfort with the "discharge" element of Count Five, that would have already been "decided at the time of his conviction."  In contrast, if defendant had wanted to appeal based on the vagueness arguments adopted by the Supreme Court in Dimaya and Davis, that appeal would indeed have been based on case law that

was "not yet decided at the time of his conviction" – and for that very same reason, it would have been impossible for defendant to have issued an instruction – <u>during</u> sentencing – to appeal on that basis.

To be clear, the first part of the court's analysis does not ask whether it would have been reasonable for defendant to instruct counsel to appeal – it asks only whether defendant did in fact issue an instruction to appeal. However, the fact that defendant's testimony and filings do not show a consistent basis on which he wanted to appeal serves to further undermine the credibility of his current allegation that he issued a clear instruction to appeal during sentencing.

In addition, the court takes into account the lack of any evidence corroborating defendant's allegations that he instructed counsel to appeal at the sentencing hearing or at any time before March 19, 2018. In contrast, Boersch's notes made contemporaneously at the sentencing hearing serve to corroborate her testimony. The court also considers its familiarity with defense counsel's many years of experience in federal criminal practice and her vigorous representation in seeking discovery and filing pretrial motions, as well as the fact that "filing of a notice of appeal is a purely ministerial task that imposes no great burden on counsel," suggesting that it would have been easy to do if defendant had indeed asked counsel to do so. See <u>Garza</u>, 139 S.Ct. at 740; <u>see also Garza</u> at 736 ("filing a notice of appeal is, generally speaking, a simple, non-substantive act that is within the defendant's prerogative.").

Thus, having considered the testimony of all witnesses, along with the evidence submitted by the parties and the history of proceedings in this case, the court concludes that defendant has not shown that he issued a clear instruction to appeal.

**II.     Whether counsel consulted with defendant about the possibility of an appeal**

The next question is whether counsel consulted with defendant about the possibility of an appeal. As an initial matter, the parties have cited no controlling law that definitively states when the consultation needs to occur – whether it can occur before

14

sentencing, or whether it must occur after sentencing.

In this case, the evidence supports the conclusion that defendant and his counsel consulted before sentencing to discuss the possibility of appeal, or more specifically, to discuss the plea agreement's waiver of defendant's right to appeal. As mentioned above, defendant met with counsel numerous times to discuss the plea agreement. The evidence also supports the conclusion that defendant was aware that he was waiving the right to appeal, and that he expressed that awareness during the change of plea hearing. See Dkt. 423 at 21, 25.

And as set forth above, the court finds no evidentiary support for defendant's argument that, during those consultations, he gave counsel "express instructions" to appeal.

That said, for the purposes of this order, the court will assume without concluding that the law requires a consultation after sentencing and that counsel did not consult with defendant after sentencing, and will address the next step of the inquiry – whether "a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." See Flores-Ortega, 528 U.S. at 480.

**III. Whether a rational defendant would have wanted to appeal, or whether this particular defendant reasonably demonstrated that he wanted to appeal**

The court will first discuss whether this particular defendant reasonably demonstrated to counsel that he wanted to appeal. As discussed above, defendant was "very involved" with his defense, and met with his counsel numerous times to discuss his decision to plead guilty, and then met or spoke with counsel nearly a dozen more times between his change of plea hearing and the sentencing hearing. And as discussed above, there is no corroborating testimony or evidence supporting defendant's present claim that he told counsel during sentencing that he wanted to appeal. Nor is there any corroborating testimony or evidence supporting defendant's previous claim that he told

counsel that he wanted to appeal after the sentencing hearing but before the March 19 deadline to file a notice of appeal. As a result, there is no basis for the court to conclude that this particular defendant reasonably demonstrated that he wanted to appeal. Defense counsel seems to base his argument on defendant's litigious nature; both his active involvement in his defense and his multiple grievances filed against the jail during his pretrial incarceration. However, his litigious nature suggests to the court that if he had wanted to appeal, he would have asked for a notice to be filed. The court has found that he did not.

As to whether a rational defendant would have wanted to appeal, the court concludes that a rational defendant would not have wanted to appeal. As an initial matter, any appeal would have been barred by the appeal waiver to which defendant knowingly agreed. Moreover, the sentence imposed by the court was reasonable in light of the sentences imposed on defendant's co-defendants, and in light of the government's stated intention to supersede the indictment with allegations that defendant was involved with a methamphetamine smuggling scheme in prison. See Dkt. 570 at 99. The court's sentence was also consistent with the parties' plea agreement; defendant was given the exact sentence that he requested. Given the length of the sentence and the lack of any indication of displeasure before sentencing, and the valid and voluntary waiver of appeal, there was no reason to believe that a rational defendant would want to appeal under those circumstances.

Additionally, under Ninth Circuit authority, "there is no material distinction between an aider and abettor and principals in any jurisdiction of the United States including California and federal courts." Ortiz-Magana v. Mukasey, 542 F.3d 653, 659 (9th Cir. 2008). Thus, to the extent that defendant argues that his appeal would have been based on his discomfort with the "discharge" element, that would have been foreclosed by controlling law, and would have not been pursued by a rational defendant.

While defendant may have subsequently developed a desire to appeal, particularly given the development of avenues of redress provided by the Dimaya and Davis

decisions, there is nothing to suggest that a rational defendant would have wanted to appeal before March 19, 2018.

Accordingly, the court concludes that defendant has not shown that a rational defendant would have wanted to appeal, or that this particular defendant reasonably demonstrated that he wanted to appeal.

## CONCLUSION

For the reasons set forth above, the motion of defendant Purvis Lamar Ellis to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 is DENIED.  This is a final order disposing of the § 2255 motion on the merits of the claims for sentence relief.

## DENIAL OF CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(1), an appeal from a final order in a proceeding under § 2255 may not be taken unless a circuit justice or judge issues a certificate of appealability ("COA").  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); see Williams v. Calderon, 83 F.3d 281, 286 (9th Cir. 1996).  Pursuant to Rule 11(a) Governing Section 2255 Proceedings, the court declines to issue a certificate of appealability because reasonable jurists would not find debatable whether the § 2255 motion conclusively shows that defendant is not entitled to relief.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Dated:  April 1, 2024

        /s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge